RINEHART AND DENNIS COMPANY, INC., Appellant, *v.* THE CITY OF NEW YORK, Respondent.

(Argued October 17, 1933; decided November 28, 1933.)

*Chase Mellen* for appellant.  The action is for breach of contract, so that plaintiff's claim is not subject to article XII of the contract.  (*Faber* v. *City of New York*, 222 N. Y. 255; *Ingraham* v. *Golden Co.*, 65 Pac. Rep. 549; *McGovern* v. *City of New York*, 202 App. Div. 317; 235 N. Y. 275; *Borough Constr. Co.* v. *City of New York*, 200 N. Y. 149; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *United States* v. *Behan*, 110 U. S. 338; *Del Genovese* v. *Third Ave. R. R. Co.*, 13 App. Div. 412; *Clarke Contracting Co.* v. *City of New York*, 229 N. Y. 413; *Pilkington* v. *City of New York*, 211 App. Div. 558; *Johnson Construction Co.* v. *State of New*

*York*, 211 App. Div. 512; *Allamon* v. *Mayor*, 43 Barb. 33; *Weisberg* v. *Art Work Shop*, 226 App. Div. 532.) The court erred in dismissing the first cause of action and should have granted plaintiff's motion for the direction of a verdict for the damages proved. (*MacKnight Flintic Stone Co.* v. *Mayor*, 160 N. Y. 72; *City of New York* v. *Penn. Steel Co.*, 206 Fed. Rep. 454; *Gearty* v. *Mayor*, 171 N. Y. 61; *Bush* v. *Jones*, 144 Fed. Rep. 942; *United States* v. *Spearin*, 248 U. S. 132; *Kuhs* v. *Flower City Tissue Mills Co.*, 104 Misc. Rep. 243; *Dwyer* v. *Mayor*, 77 App. Div. 224.)

*Arthur J. W. Hilly, Corporation Counsel* (*J. Joseph Lilly, Henry J. Shields* and *Matthew Troy* of counsel), for respondent. The first cause of action was properly dismissed. (*Campbell* v. *City of New York*, 244 N. Y. 317.) There was no waiver by the defendant of the provisions of article XII of the contract. (*Alsens A. P. C. Works* v. *Degnon Contr. Co.*, 222 N. Y. 34; *Granger Co.* v. *Universal Machinery Corp.*, 193 App. Div. 234; *Newburger* v. *Lubell*, 257 N. Y. 383; *Lord & Burnham Co.* v. *City of New York*, 251 N. Y. 198; *Nissen* v. *McCafferty*, 202 App. Div. 528.) The plaintiff is precluded from claiming damages because of its neglect to make written demands as required under the contract provisions. (*Odell* v. *City of New York*, 206 App. Div. 68; *Degnon Contr. Co.* v. *City of New York*, 202 App. Div. 390; *Ryan* v. *City of New York*, 179 App. Div. 181.)

CRANE, J. The plaintiff and the defendant entered into a contract whereby the plaintiff, on a unit price basis, undertook to construct a section, nine miles long, of the so-called Catskill Aqueduct. After the completion of the work by the plaintiff, and its acceptance by the defendant, the plaintiff brought this action to recover damages caused by alleged breaches of the contract made by the defendant. The appeal relates to three causes of action of that nature which were dismissed by the Trial Term.

The disposition below of the third cause of action, known as the Reynolds Hill claim, and the fifth cause of action, referred to as the Pumping claim, must be affirmed. The first cause of action, however, referred to as the Bronze claim, was not barred by article XII of the contract.

Section 82.2 of the contract read as follows: " Bronze for ladders shall be rolled metal, but bronze for valve-stem guides and other purposes may be cast. All bronze shall be equal to Hyde or Parsons bronze, and shall have a tensile strength of not less than 55,000 pounds per square inch, an elastic limit of 50 per cent of the tensile strength, and an elongation of not less than 25 per cent in 2 inches, unless for designated purposes a different bronze be required or accepted."

The bronze furnished by the plaintiff met these requirements in every particular. Upon the argument in this court it was conceded by the Corporation Counsel that the specifications had been complied with. The Engineer of the Board of Water Supply was present at the factories and inspected the material while in the course of manufacture and in the laboratory tests. He found it to comply with the specifications and stamped it with initials, indicating that it met with all requirements. The bronze ladders were installed and accepted by the city. They were in use for over a year before it was discovered that bronze was not the proper material for the purpose intended. The ladders were exposed to the weather and deteriorated in quality. Like bronze used elsewhere manifested the same defects. These were winter or weather cracks. The city claimed that the bronze was drawn too hard. Nothing in the specifications refers to the rolling, whether the metal should be rolled hot or cold, hard or not hard. The experts conceded that it had been properly rolled and in a workman-like manner. As before stated, the Board's Engineer inspected the work and approved it.

We start, therefore, with the fact that the contractor had furnished bronze ladders in full compliance with its contract and should have been paid therefor. Instead the city ordered new ladders. The objection to paying for this additional bronze is that the contractor failed to ask for its money in time. Such a defense cannot be expected to be received with sympathy or encouragement.

Article XV of the contract reads as follows: " The inspection of the work shall not relieve the contractor of any of his obligations to fulfill his contract as herein prescribed, and defective work shall be made good, and unsuitable materials may be rejected, notwithstanding that such work and materials have been previously overlooked by the Engineer and accepted or estimated for payment. If the work, or any part thereof, shall be found defective before the final acceptance of the whole work, the contractor shall forthwith make good such defect, in a manner satisfactory to the Engineer, and if any material brought upon the ground for use in the work, or selected for the same, shall be condemned by the Engineer as unsuitable or not in conformity with the specifications, the contractor shall forthwith remove such materials to a satisfactory distance from the vicinity of the work."

Having fully complied with the contract regarding the bronze ladders, the City Engineer one year after the acceptance and use of them, directed the contractor to take them out and replace them with others, pursuant to the provisions of this article XV. This resulted in protest and in correspondence.

On September 26, 1913, the plaintiff wrote the Engineer: " Your letter of Sept. 25th to hand and in reply to same will say, that it is a very late day to condemn bronze specified in your letter. Our manufacturer used the proper mixture or ingredients that your inspector specified for making the bronze in question. In other words all instructions were carried out to the fullest extent and

the bronze was accepted at the factory, it was also accepted here on the work and part payment made at the time of arrival on the job. At the same time becoming the property of the City of New York in accordance with Article 16 of the Contract. * * * Any additional bronze that will have to be bought to replace any bronze that is now on the work, we will expect our contract price for same. Please advise if we may order the bronze as specified in your letter of Sept. 25th, and receive contract price for same."

Again, on October 21, 1913, the plaintiff wrote the Chief Engineer: " We are willing, *under protest*, to comply with your demand, and remove any installed material condemned by you since its installation, and to replace same * * * reserving our right to collect from the city of New York for the reasonable value of such replaced material."

The Chief Engineer replied, and this is his reply:

*" October* 27, 1913.

" It would seem that the question here involved is fully covered by the provisions of Article XV on page 57 of your contract. However, in view of the *unusual* conditions which are presented, we are entirely willing to treat the matter of any claim for additional compensation which you may present, so far as we have the legal power to do so, in a spirit of fairness and equity. This, as you must realize, *will of course take time*, and in the meanwhile, I am glad to know that you will proceed with the replacement of the material."

We are not told in this case what the " unusual conditions " are. Neither are we informed why a contractor who has failed to comply with the specifications should have additional compensation. As we have already stated, the Engineer felt himself to be in the wrong or, at least, partially in the wrong and was doing the best he could to correct the mistakes of the city or its servants.

On this assurance, that the claim for additional com-

pensation would be treated in the spirit of fairness and equity, although it would take time, the plaintiff proceeded with the work of replacement.

The " equity " consisted, as before stated, in compelling a contractor who had performed its contract, to do the work over again in accordance with details not theretofore specified. In view of this correspondence and of the work done by the contractor, in reliance thereon, it is said that it cannot recover anything because of article XII. This required the contractor to make a written statement of any damage sustained by reason of the acts of the Board to the Engineer within five days after sustaining the damage. The Engineer had a written statement. He was told in the letter above quoted that the replacement would be made under protest and at the contract price. He induced the replacement by stating in writing that the claim for additional compensation would be treated in a spirit of fairness and equity and suggesting that payment therefor would of course take time. After the work was done, the Board of Water Supply suggested that the claims be filed with the Comptroller, which was done more than thirty days before the commencement of this action.

The provisions of article XII were substantially complied with; the Engineer had due and timely notice. He ordered the replacement, knowing the details and the cost. The five days' notice was never contemplated or expected. If ever there was a waiver of a useless formality this is one. No claim has ever been made, until the argument of this case, that the Engineer did not have proper notice of the plaintiff's claim or should have received a statement within five days after damage done. I doubt whether the clause refers to such facts as we have here.

As to all matters relating to the performance of the contract, the Chief Engineer was the authorized agent of the city. The contractor could have said, I shall

not replace this bronze because it complies in all respects with the specifications. Obviously the Engineer and the city wanted to have the work promptly attended to, and it was within the scope of his duties to do whatever would forward the work. The work would be forwarded by having the contractor replace the material, leaving the compensation to be settled later.

Article III of the contract provides as follows: " To prevent disputes and litigations, the engineer * * * shall determine all questions in relation to said work and the construction thereof, and shall in all cases decide every question which may arise relative to the fulfillment of this contract on the part of the contractor."

This case cannot be distinguished from *McGovern* v. *City of New York* (202 App. Div. 317; affd., 235 N. Y. 275, in a *per curiam* opinion). Article XLIII of that contract was the same as article XII here in question, with the exception that the word " shall " is now used in place of the word " may "— without the five days' notice the claim for compensation " shall " be forfeited, instead of " may " be forfeited. Waiver, however, applies as much to a provision containing the word " shall " as one containing the word " may." A contractor, led by correspondence to believe that a useless step or procedure need not be taken, is not to be penalized because the word " shall " is used instead of " may." This distinction is entirely too tenuous for the working man whose time, material and labor the city of New York desires to have and to hold without any compensation.

The judgment should be modified by reversing so much thereof as dismisses the first cause of action and granting a new trial thereon with costs to the appellant to abide the event; otherwise judgment should be affirmed without costs.

POUND, Ch. J., LEHMAN, HUBBS and CROUCH, JJ., concur; KELLOGG and O'BRIEN, JJ., dissent as to modification and vote to affirm.

Judgment accordingly.