Keating, J.
In this contract action, the plaintiff seeks to recover the stipulated reasonable value of extra work performed on a construction job, and damages allegedly resulting from delays in the progress of the construction schedule due to the defendant’s fault.
A judgment of the Supreme Court awarding the plaintiff $23,951.88 on the extra work claim, and $120,000 on the delay claim, after trial with a jury, has been reversed by the Appellate Division, and the complaint has been dismissed.
Dismissal of the extra work claim is predicated on plaintiff’s failure to comply with the “ notice ” and “ protest ” provisions of the written contract. Dismissal of the delay damages claim is based on plaintiff’s written waiver of any right to recover therefor in exchange for an extension of the contract completion date and a substantial completion payment.
In 1952 the plaintiff’s bid for the plumbing contract in connection with the building of Elmhurst General Hospital was accepted by the defendant. From the beginning of the work, numerous necessary changes in the construction plans and problems arising out of poor co-ordination between various contractors caused delays in the construction schedule.
*95 Co-ordination meetings followed, presided over by one Bernard J. Farrell, and attended by the various prime contractors. Farrell’s status is significant. He is described as the ‘ ‘ Director of Buildings, in charge of Construction and Design, of the Department of Public Works ” and as the superior of the resident engineer. The resident engineer testified that Farrell was in charge of design and construction. Whatever his formal title, however, Farrell played a major role in directing the planning and co-ordination of the construction project.
As a result of these conferences, Farrell directed the plaintiff to employ an engineer to assist with the co-ordination and redesign work. Nothing was said about payment for his services. Some three months later, however, as the work progressed, plaintiff spoke to Farrell about compensation for this additional work. Farrell answered that they would sit down at a later date and iron out all the financial differences between the work as originally estimated and as it now had to be performed, including the additional engineering services. There the matter rested, at least temporarily.
We turn now to the contract itself. It establishes two classes of work, contract work, and extra work, and it provides that an order to perform extra work ‘ ‘ shall be valid only if issued in writing and signed by the Commissioner ”. (Italics supplied.)
Under the contract, if the commissioner, the engineer, or the resident engineer directs work to be done as contract work, and the contractor believes it to be extra work not covered by the agreement, the contractor must notify the commissioner in writing and obtain a determination. If the determination is adverse, the contractor must still comply with the work order, but may protect his rights by giving the commissioner notice of “ protest ” within five days. Otherwise the claim for extra compensation is waived.
Where the contractor is performing extra work, or disputed work after protest, he is required to furnish the resident engineer with daily reports indicating the nature and quantity of the work being done.
Finally, the agreement gives the resident engineer general supervisory powers, but explicitly provides that he may not issue an extra work order. It adds that “ The Contractor is warned that the Resident Engineer has no power to change the terms and provisions of this contract ”,
*96 We note, initially, that plaintiff’s right to recover is not automatically precluded by its failure to obtain a determination and thereafter protest the extra work order. That clause, by its language, applies only where work is ordered to be done ‘ ‘ as contract work”, and it is manifestly clear that such was not the present case. Farrell directed the work to be done without classifying it and, when the question was subsequently raised by the plaintiff, Farrell only replied that it would be ironed out at a later date. The fact remains, however, that Farrell was without authority under the contract to issue the extra work order, since such work could only be done on the written order of the commissioner, and that the contract made no provision for the future settlement of claims other than by the “ protest ” method stated. Thus it is clear that the plaintiff proceeded to do what it considered extra work without complying with the contract.
Conceding this failure, the question nonetheless remains whether the defendant’s conduct precludes it from interposing the contract to bar a recovery. The Appellate Division majority held that notwithstanding the jury’s verdict recovery was barred as a matter of law. We disagree. In our opinion, enough evidence was produced to make the questions of waiver and estoppel fair questions of fact for the jury. No rule of law precludes such a waiver (Abells v. City of Syracuse, 7 App. Div. 501; Rinehart & Dennis Co. v. City of New York, 263 N. Y. 120, 126; A. & J. Cianciulli Inc. v. Town of Greenburg, 8 A D 2d 963, affd. 9 N Y 2d 812).
The evidence tends to show that, while the plaintiff’s bid for the work was accepted in 1952, the work was not substantially completed until 1956 nor finally completed until 1958. In October of 1958, notices of claims in the amount of $254,558 were filed with the comptroller which included the claims presently in suit. In all, the plaintiff presented 91 claims for extra compensation which accrued in substantially the same manner as the engineering claim, viz.: upon the instructions of Farrell or the resident engineer. Of these, all but 9 were taken in due course and settled by the commissioner or by the engineers in charge through the issuance of subsequent formal change orders. Of the remaining 9, all but the 2 now before us have been settled.
*97 In short, the defendant conceded or settled each claim upon its merits as an extra, without requiring strict compliance with the “protest” provisions of the agreement and, upon being unable to settle or unwilling to concede the propriety of the engineering services, it chose to fall back upon the requirements of the contract. Thus, while we agree with the Appellate Division’s view that defendant’s payment of the other claims could not and did not lull plaintiff into a feeling of security because they occurred long after the extra work was completed, we think they are nonetheless significant insofar as they indicate the intent of the parties to follow a procedure other than that provided by the written agreement.
The procedure which was followed is clear.
Starting with the proposition that original construction plans required major and constant revisions, and that the city bureaus in charge of processing change orders were behind schedule, it became necessary to find some method of proceeding with the work without waiting for the often delayed change orders. Thus, the testimony established that work was usually done before the issuance of change orders and that such work was either disputed work from the beginning, e.g., where the contractor was told it was contract work and where he disagreed, in which case it was done under protest, or where the question was left open for future determination, and change orders were subsequently issued. In this way the work progressed with minimum delay. In all, on this project over 400 change orders were issued and subsequently confirmed by the commissioner.
As to the extra engineering services sued for here, it appears that such services were noted by the plaintiff in daily reports filed with the Department of Public Works. Thus it is clear that the claim for engineering services arose in substantially the same manner as did the other extras, and that the defendant treated it as such, subject to approval as a valid extra. That failing, it chose to segregate this claim from the other extras and to rely upon the terms of the written agreement.
We agree with the dissent below that the commissioner was chargeable with notice of the work progress and the faulty design. Farrell, as a senior representative of the city, was obviously in charge of the work co-ordination and progress and, as there is no question of collusion between the plaintiff and *98 Farrell, nor any question of the plaintiff’s good faith rendition of services, the benefits of which were accepted by the defendant, we think that the questions of waiver and estoppel were properly submitted to the jury, and that it was error to reverse this item of the award.
With regard to the second item of recovery, plaintiff contended that economic duress practiced by the commissioner induced it to sign a waiver of any claims for damages due to delay, in exchange for an extension of the completion date and a substantial completion payment.
The court below held that the proof did not establish duress and that, even if it did, the duress was practiced in 1956 and not disaffirmed until 1958, and thus not disaffirmed within a reasonable time. We agree.
Since an extension of the completion date was essential to obtaining a substantial completion payment, it appears that the plaintiff, in its extension application, agreed to waive delay claims because it was told that a completion payment would not otherwise be approved. Thereafter, the plaintiff spoke to the commissioner, who persisted in demanding the waiver. Plaintiff explained his need for the money in order to pay bills, but the commissioner was unmoved.
This fails to establish duress. There is no showing that the defendant did anything more than affirm its previously stated position, and that the defendant was in no way responsible for the plaintiff’s financial distress. Moreover, under the terms of the written contract, the granting of a substantial completion payment rested solely in the discretion of the commissioner.
Finally, if we were to reach the question, we would agree that the alleged duress was not promptly disaffirmed. Plaintiff claims that the two-year delay was born of fear of reprisals based upon other contracts it had with the defendant. Such self-imposed, undisclosed, and subjective fears do not constitute an act of duress by the defendant cognizable in law.
The judgment of the Appellate Division should be reversed and, since the Appellate Division has not passed on the facts, the case should be remitted to that court for further proceedings not inconsistent with this opinion, with costs.