# (April 16, 1984)

■ ALBERT SAGGESE, INC., and ANTHONY RIVERA CONSTRUCTION CO., INC., a Joint Venture, Plaintiff and Fourth-Party Defendant-Respondent-Appellant, v TOWN OF HEMPSTEAD, Defendant and Third-Party Plaintiff-Appellant-Respondent. ROYAL INDEMNITY COMPANY, Third-Party Defendant and Fourth-Party Plaintiff-Respondent; ALBERT SAGGESE, Fourth-Party Defendant-Respondent-Appellant. — In an action to recover damages for breach of contract, (1) defendant Town of Hempstead appeals from a judgment of the Supreme Court, Nassau County (Robbins, J.), entered June 3, 1981, which, after a nonjury trial, *inter alia,* awarded plaintiff damages in the principal sum of $116,679.32 and awarded the third-party defendant Royal Indemnity Company damages against it in the principal sums of $311,382.82 and $53,960.80, and (2) plaintiff cross-appeals, as limited by its notice of appeal and brief, from so much of the same judgment as denied it recovery on its claim for stockpiling and awarded certain damages to Royal Indemnity Company instead of to it. ¶ Judgment modified, on the law and the facts, by (1) reducing the damages awarded in the first decretal paragraph from the principal sum of $116,679.32 to the principal sum of $54,060; (2) deleting the second and third decretal paragraphs, and substituting therefor provisions dismissing Royal Indemnity Company's first, second, third and fourth counterclaims against the town, and on its fifth counterclaim against the town, awarding it the principal sum of $5,628 for extra dredge material, and otherwise severing the fifth counterclaim, and (3) adding a provision reinstating the town's counterclaims against plaintiff and Royal Indemnity Company for liquidated damages and severing these counterclaims. As so modified, judgment affirmed insofar as appealed from, without

costs or disbursements, and matter remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith. ¶ In March, 1972, plaintiff and defendant Town of Hempstead entered into a contract for the construction of a bulkhead and a dredging and fill operation in order to convert some land into a park and recreation area. On or about January 30, 1973, the town declared plaintiff in default and called upon the surety, Royal Indemnity Company, to complete performance pursuant to its performance bond. ¶ Plaintiff thereupon commenced this action to recover damages for alleged breach of contract and *quantum meruit,* and claiming damages for extra work performed. The town counterclaimed and brought a third-party action against the surety to recover liquidated damages for late performance. The surety, *inter alia,* counterclaimed against the town for extras and brought a fourth-party action against plaintiff for, *inter alia,* indemnification. ¶ Following a nonjury trial, the court found that the plaintiff was entitled to recover for the majority of its claims and that the surety was entitled to recover for its completion costs and for extra work performed. We find that a substantial modification is in order. ¶ At the threshold we note that while the town delegated substantial supervisory authority to its retained engineer, pursuant to section GC-35 of the contract, it expressly precluded him from giving oral consent to any work changes. Specifically, the section provided that "no such change shall * * * require the payment of additional compensation to the Contractor, unless it has been made in writing and signed by the Engineer" and that "no oral agreement, conversation, or understanding between the Contractor and the Engineer * * * before or after the execution of the Contract shall affect or modify any of the terms or obligations of the Contract Documents". ¶ The clear purpose of this contractual provision is to obviate any issue as to the credibility of either the contractor or the engineer as to what was or what was not said by either of them. Trial Term erred in declining to enforce the clause as written and there is no basis on this record to impose an estoppel or waiver against the town. Unlike the situations presented in the cases cited by plaintiff (e.g., *Joseph F. Egan, Inc. v City of New York,* 17 NY2d 90), the engineer was not a town official who could waive contractual provisions and, indeed, was expressly precluded from doing so. As a matter of law, plaintiff could not rely upon any assurances allegedly made by the engineer. ¶ If plaintiff believed that it was necessary to undertake work or provide materials outside the parameters of the contract, it should have secured a signed agreement to that effect. Having failed to do so, it is barred from obtaining recovery for the claimed work changes and extras not supported by a written order (see *Mars Assoc. v City of New York,* 53 NY2d 627, affg 70 AD2d 839). ¶ In any event, our review of the record indicates that, except for the additional pile lengths, which were the subject of a written change order, the weight of the evidence does not support plaintiff's claim for further compensation. Since the contract made clear that plaintiff was to rely upon its own investigation of the site conditions, "no recovery for extra work may be had, absent a showing of fraud or misrepresentation as to existing conditions" (*Savin Bros. v State of New York,* 62 AD2d 511, 515, affd 47 NY2d 934). We find no evidence of fraud or bad faith (cf. *Kalisch-Jarcho, Inc. v City of New York,* 58 NY2d 377). The town cannot be held liable for plaintiff's failure to adequately gauge the costs of performance (*Delma Eng. Corp. v 6465 Realty Co.,* 39 AD2d 846, affd 31 NY2d 816). ¶ The town did, however, execute a written change order for "[a]dditional footage of timber piling driven for [the] bulkhead deadman system". Although the footage stated in the order was for 1,460 with the stated unit price of $4 per foot, plaintiffs alleged that, based on an overrun of 4,505 feet at a marine installation cost of $12 per foot, $54,060 was due. The town's recognition and retroactive acceptance of this wood piling as a legitimate extra warranted

Trial Term's finding that $54,060 ($12 times 4,505) represents plaintiff's damages with respect to this item. ¶ Turning to the claim that the contract was improperly terminated by the town, we note that the contract permits the town to terminate the contract when, *inter alia,* it is "of the opinion * * * that the work or any part thereof is unnecessarily delayed" provided the contractor is given "an opportunity to be heard". We find that the January 11, 1973 meeting, at which the engineer and representatives of the plaintiff and the town were present, provided plaintiff an ample "opportunity to be heard" and to explain, *inter alia,* why the delays were not its fault and to promise that the liens filed would be disposed of forthwith. In addition, a follow-up "opportunity to be heard" was offered by a letter dated January 19, 1973 from the town to plaintiff. We perceive no basis to elevate the contractual "opportunity to be heard" requirement to the level of an adversarial hearing (cf. *Matter of Peninsula Gen. Nursing Home v Sugarman,* 44 NY2d 909, revg on dissenting opn of Lane, J., at 57 AD2d 268, 277-281). ¶ We now direct our attention to the counterclaims asserted by the surety against the town. ¶ The fifth counterclaim by the surety against the town alleged that, in the course of its completion of the remaining work, it was required by the town to furnish dredge material above the requirements of the contract between the town and the plaintiff, with the reasonable value of $5,628. The trial court awarded this sum to the surety. While the town contends that the surety's proof was insufficient because the testimony of the surety's contractor on this issue was essentially conclusory and not accompanied by documentation, its counsel chose not to contest this at trial and we find that there is sufficient evidence to support this aspect of the court's award. ¶ The pleadings of the surety and the plaintiff, however, made no claim for extra fill, nor was it disclosed by bill of particulars, deposition or discovery proceedings. After all sides rested their direct cases, and while the plaintiff's expert was testifying in rebuttal, the court, over objection of the town, permitted amendment of plaintiff's pleadings and the surety's fifth counterclaim to assert that claim, and awarded judgment to the surety against the town for $48,332.80 for 20,480 cubic yards of extra fill. Since the trial was held some eight years after completion of the work and the surety made no claim at trial of recent discovery, this was prejudicial error. The fact that the town may have simultaneously recorded the amount of fill delivered to the site does not negate the fact that the claim constituted a surprise and seriously prejudiced the town in connection with its preparation for trial. Thus, the provision of the judgment awarding the surety $48,322.80 must be deleted and a new trial granted on this claim (see *Xavier v Grunberg,* 67 AD2d 632). ¶ In addition, we conclude that the trial court's implicit finding that the town was not entitled to the contract-stipulated liquidated damages for delay was contrary to the weight of the evidence. Thus the town should be granted a new trial on its claims for liquidated damages. ¶ Our setting aside of those provisions of the judgment in favor of plaintiff (except as to the single item of $54,060 for wood pilings), and in favor of the surety against the town (except as to the award of $5,628 for extra dredge material), operates to reinstate the town's counterclaim against plaintiff for liquidated damages and the town's counterclaim against the surety for liquidated damages. These matters, as well as the surety's claim against the town for extra fill asserted in its fifth counterclaim as amended during trial are therefore remitted to the Supreme Court, Nassau County, for a new trial consistent herewith. Titone, J. P., Gibbons, O'Connor and Weinstein, JJ., concur.