OPINION OF THE COURT
Mazzarelli, J.
This dispute concerns the Deutsche Bank Building, which neighbored the World Trade Center and was severely damaged on September 11, 2001. Defendant, Lower Manhattan Development Corp. (LMDC), is a subsidiary of the Urban Development Corporation doing business as the Empire State Development Corporation, a joint city-state corporation charged with redeveloping lower Manhattan. LMDC purchased the building from Deutsche Bank after the 9/11 attacks and discovered that contaminants such as asbestos and lead were likely present. Accordingly, on September 8, 2005, LMDC and other governmental authorities approved a “Deconstruction Plan,” to abate, clean, decontaminate, empty, deconstruct, and remove the building.
Plaintiff, Bovis Lend Lease (LMB), Inc., submitted the winning bid to carry out the deconstruction plan. It and LMDC executed a contract requiring Bovis to perform the abatement, decontamination, and deconstruction services in exchange for a lump sum of approximately $74.8 million. That amount was later increased to approximately $81 million. Bovis made several representations and warranties in the contract. For *138 example, it acknowledged that it was accepting a lump sum and, except with LMDC’s consent, was not entitled to additional compensation, “notwithstanding whatever obstacles or unforeseeable conditions may arise or be encountered.” It “accept[ed] all conditions in the Building . . . and otherwise at the Site, whether or not such conditions were foreseeable, as they exist or may eventually be found to exist, and in whatever condition same may exist.” Bovis also agreed to accept a variety of risks, “whether they arise from acts or omissions of [Bovis], of LMDC, or of third persons, or from any other cause, and whether such risks are within or beyond the control of [Bovis] and/or are known or unknown, and foreseeable or unforeseeable.” One of the specific risks delineated in that section of the contract was “[t]he risk of all regulatory and other Governmental Authority delays.” In addition, Bovis agreed
“to make no claim for damages for delay in the Work (or the performance thereof) of any kind whatsoever, whether foreseeable or unforeseeable, and agree[d] that any such claim shall be compensated for solely by an extension of time to complete performance of the Work when the provisions of Article 12 hereof allow same.”
In the section describing the project’s “Scope of Work,” the contract provided that
“[a]ny and all changes to the Deconstruction Plan . . . require LMDC’s advance written permission and the approval of the applicable Governmental Authorities. No such changes may be requested without LMDC’s advance consent and written approval. No such changes shall be deemed Extra Work.”
Indeed, “Extra Work” was specifically defined in the contract, which made clear that anything not considered extra work was included in the work compensated for by the lump sum. As relevant here, extra work was defined as “[w]ork required by a written Change Order issued by LMDC pursuant to Article 22 hereof which . . . adds substantial scope or program to the Scope of Work.” The contract further specified: “For the avoidance of doubt, ‘Extra Work’ does not include [among other things] ...(f) any Work required by reason of any change in Legal Requirements . . . ; and/or (g) Work required by reason of any risk or obligation assumed by [Bovis] in any part of the Contract Documents.” A “Legal Requirement” was itself *139 defined, in relevant part, as “any statute, ordinance, code, law, rule, regulation, permit, agency notice or order, . . . order, decision, determination, or other written requirement, standard or procedure enacted, adopted or applied by any Governmental Authority, or any administrative . . . interpretation thereof, together with all related . . . implementing regulations.” The definition also made clear that “actions taken ‘in order to comply with any Legal Requirement,’ or actions ‘necessary to comply with any Legal Requirement’ shall include actions taken in order to meet a Legal Requirement in the absence of a written order or other such directive mandating such actions.”
Even if work qualified as Extra Work, the contract still specified that “[n]o Extra Work shall be performed except pursuant to a Change Order of LMDC expressly and unmistakably indicating LMDC’s intention to treat the Work described therein as Extra Work, subject to the next paragraph.” The “next paragraph” stated:
“If [Bovis] is of the opinion that any Work ordered to be done as Work pursuant to the Contract Documents is instead Extra Work (‘Disputed Work’), [Bovis] shall nevertheless comply with such order, but shall within 72 hours give written notice thereof to LMDC, stating why [Bovis] deems it to be Extra Work, and shall moreover furnish to LMDC time slips and memoranda as required by Article 7 hereof.”
Finally, the contract contained an “acceleration” provision, which stated:
“If at any time the Work is not progressing in accordance with the CPM Schedule or the Work is likely to be delayed for any reason within the control of [Bovis], or if LMDC otherwise desires to accelerate the Work for any reason, LMDC may give [Bovis] Notice requiring [Bovis] to:
“1.) increase the number of workers and/or the amount or types of machinery, tools, equipment, or materials employed by [Bovis] in or for the performance of the Work; and/or
“2.) schedule and conduct additional lawful work shifts. . . .
“Costs of additional labor, machinery, tools, equip *140 ment and/or materials, if any, required by LMDC under this Article:
“3.) shall be borne by [Bovis] as part of the Lump Sum if and to the extent the applicable acceleration of Work was necessary or appropriate to maintain [Bovis]’s compliance with, and progress under, the CPM Schedule as updated pursuant to the Specifications immediately prior to the date of such acceleration; or
“4.) otherwise shall be borne by LMDC as Extra Work.”
In the contract, Bovis agreed to a binding schedule for the work, which required it, among other things, to complete the work by March 15, 2007, “time being of the essence.” However, according to Bovis, factors completely outside of its control made completion by that date impossible. Most significant was what Bovis characterizes as unforeseen interference by regulators monitoring the efficacy of the abatement portion of the project. Bovis asserts that the plans and specifications it relied on in bidding for and entering into the contract provided that the protocol governing the abatement work was embodied in Industrial Code Rule 56 (12 NYCRR 56-1.1) (ICR 56) and that this was the standard that had been followed for decades in asbestos abatement projects in New York City. According to Bovis, ICR 56 does not require that representatives of regulatory bodies perform visual inspections of the ongoing work to ensure compliance with the standard. However, it claims that the relevant regulators, with LMDC’s knowledge and approval, insisted on visual inspections and adopted an unpractically high standard of cleanliness. For example, Bovis alleges that regulators would “fail” any portion of the building that contained pieces of debris larger than a dime, a supposedly arbitrary measurement. In addition, any and all nonporous material was to be presumed to be contaminated with asbestos and removed during the abatement phase, rather than during the demolition phase. Bovis further claims that the inspectors visited the site frequently and took several hours each visit to perform their work, which interfered with its ability to work efficiently.
The lengthy and frequent visits, as well as the implementation of rules that Bovis claims were unreasonable and impossible to foresee, allegedly slowed the abatement process down significantly. LMDC issued two change orders in response to Bo *141 vis’s complaints about these delays. After LMDC refused to pay the second change order, Bovis threatened to commence formal arbitration against LMDC. To resolve the dispute, Bovis and LMDC entered into a “Supplemental Agreement.” The supplemental agreement required Bovis to implement sufficient measures, subject to LMDC’s approval, to complete the project by December 31, 2007. These expressly included a workforce of 200 people, double the number Bovis claims it originally anticipated for the project. The supplemental agreement required LMDC to pay an additional $9.7 million outright towards the increased costs of abatement, and to “advance” an additional $28.3 million. This was subject to refund by Bovis if LMDC could establish that the payment was not necessary. In any event, the payments were to be applied to actual out-of-pocket costs only, and not to overhead and profit markups. The supplemental agreement reiterated Bovis’s obligation, set forth in article 12 of the original contract, to formally request additional time to complete the work because of “Excusable Delays,” defined in the contract as resulting from, among other things, “changes in Legal Requirements” and “any other cause beyond [Bovis]’s control.” However, it also absolved Bovis of any obligation to formally notify LMDC that it considered work it performed outside the scope of the original contract to be extra work.
After the supplemental agreement was executed, Bovis submitted a request to LMDC for an extension of time to complete the project. The request cited excusable delays spanning the period from March 2006 (the beginning of the project) to February 2007. The causes of the delays included, among other things, regulatory interference and resulting cash flow problems. Bovis claimed a total of 52 weeks in delay. Thus, Bovis requested that the deadline, notwithstanding the supplemental agreement’s having extended it to December 31, 2007, be further extended to June 3, 2008. Bovis claims that LMDC did not respond to the request and that, in fact, the interference caused by regulatory inspections became even worse, further delaying the project.
According to Bovis, additional delays resulted from a fire that broke out on the 17th floor of the building in August 2007, damaging 10 floors, and, tragically, causing the deaths of two firefighters. On January 8, 2008, the parties entered into a letter agreement intended to permit completion of the project, Bovis’s grievances notwithstanding. This agreement required Bo *142 vis to hire a new subcontractor to complete the project (its previous subcontractor’s negligent conduct was found to have caused the fire). The letter agreement also provided that until completion, LMDC would pay general conditions (i.e., non-trade costs such as electricity, insurance, and site security) in an amount reflecting the actual costs incurred. However, “[incremental insurance costs resulting from [the] fire delay” were not to be billed as general conditions. Otherwise, plaintiff agreed to “abide by the terms of the Contract . . . including all financial terms.” The project was completed in early 2011.
Bovis’s amended complaint asserts seven causes of action, four of which (the second, third, fourth and fifth) are at issue on this appeal. The second cause of action is related to the moneys conditionally advanced to Bovis by LMDC pursuant to the supplemental agreement. As is relevant to this appeal, Bovis claims that it is entitled to retain those moneys since they compensated it for material changes in the scope of work and unanticipated conditions that resulted in delay. Bovis’s third cause of action seeks unspecified amounts due under the contract for general conditions costs and profit, including costs of insurance and backcharges allegedly asserted against Bovis by LMDC. Bovis’s fourth cause of action seeks damages for “extra . . . work” and “work disruption” caused by “regulatory requirements that were beyond all precedent on the Project or any similar project.” The fifth cause of action seeks damages for “constructive acceleration,” which allegedly resulted from LMDC’s failure to grant Bovis’s “numerous . . . written requests for an extension of the final completion date based upon excusable delays.”
LMDC moved to dismiss the second through seventh causes of action. With respect to the second cause of action, it argued that Bovis’s claim that it was entitled to additional compensation as a result of so-called regulatory interference was barred by various provisions in the contract. LMDC specifically cited, among others, those clauses that precluded additional compensation for delay and excluded from the definition of extra work “Legal Requirements” and risk factors expressly assumed by Bovis in the contract. It further cited the clauses that provided that Bovis’s only remedy for delay would be extensions of time, rather than monetary damages.
LMDC asserted that plaintiffs third cause of action did not state a claim because, to the extent it sought recovery of insurance costs, the letter agreement expressly barred their recovery. *143 With respect to the fourth cause of action, LMDC again argued that what Bovis characterized as extra work was not so under the relevant provisions in the contract, characterizing the regulatory inspections that Bovis claimed resulted in significant delay as “Legal Requirements,” which the contract expressly stated did not constitute extra work. It also cited, once again, those provisions barring delay damages. LMDC sought dismissal of the fifth cause of action on the basis that it never accelerated the work as that term was defined in the contract. In fact, LMDC argued, a claim of acceleration was absurd because Bovis completed the project behind schedule, not ahead of schedule.
In opposition to the motion, Bovis claimed that it was entitled to the damages sought in its second cause of action because its cost overruns fell within the definition of extra work under the contract, or were compensable as a consequence of LMDC’s decision to accelerate the work. As for the third cause of action, Bovis characterized the January 8, 2008 letter agreement as only apportioning insurance costs on a pro rata basis, not absolving LMDC of any responsibility to pay. Bovis claimed that its fourth cause of action stated a claim because no fair interpretation of the contract required it to absorb the costs resulting from wholly unforeseeable interference by regulators. In any event, it argued, the inspections that it claimed delayed its work were not made pursuant to any identifiable “Legal Requirements” that would take it outside the scope of extra work, as that term was defined by the contract. Finally, Bovis contended that its claim for damages arising out of LMDC’s acceleration of the project should not be dismissed because although it had legitimate reasons to request an extension of the completion date to June 3, 2008, LMDC insisted that it achieve the completion date of December 31, 2007.
To the extent relevant to this appeal, the motion court dismissed the second and third causes of action in part and the fourth and fifth causes of action. The court dismissed the portions of the second cause of action seeking damages for changes in the scope of work, changed project conditions, and acceleration, reasoning that the contract “clearly provided that additional costs in connection with a change to the Scope of Work are not recoverable unless LMDC issued a written change order with respect thereto.” The court noted that LMDC issued some written change orders, but pointed out that Bovis’s claim sought damages beyond any change orders. The court denied LMDC’s motion to dismiss the remaining portions of the second cause of *144 action, including, insofar as pertinent to this appeal, Bovis’s claim for damages for extra work allegedly resulting from unforeseeable interference by the regulators. The court noted Bovis’s allegations that that interference was excessive and unprecedented. While acknowledging the contract’s provision that there would be no damages for delay, it held that that provision could not be used to bar claims for damages for unforeseeable delays.
The court dismissed all aspects of the third cause of action except for one that is not challenged here, finding that the supplemental agreement required Bovis to maintain insurance at its own expense. The court dismissed the fourth cause of action as duplicative of the second, but stated that to the extent the fourth cause of action sought damages for delays resulting from regulatory interference, the claim was “subsumed” in that portion of the second cause of action that survived the motion. Finally, the court dismissed the fifth cause of action, for damages for LMDC’s alleged acceleration of the project, on the basis that the contract provided that plaintiff would bear the costs of acceleration to the extent acceleration was necessary to maintain plaintiff’s compliance with the CPM Schedule. The court explained that “LMDC was directing plaintiff to prosecute the work expeditiously and diligently, and meet a deadline many months after the Contract completion date.” (2011 NY Slip Op 33686[U], *25 [2011].)
Bovis moved for renewal and reargument of the first order, or for leave to file a second amended complaint. It sought reargument on the ground that, among other things, the court’s prior order improperly dismissed the acceleration claim based on its finding that a deadline of December 31, 2007 applied at the time of the supplemental agreement, and overlooked the fact that Bovis claimed entitlement to a later deadline due to excusable delays. Bovis also contended that it was entitled to damages for its insurance costs pursuant to the January 8 letter agreement. In support of renewal, Bovis submitted an affidavit by an executive who asserted that, regarding the acceleration claim, the CPM Schedule and completion deadline were not “fixed” but were “continually revised over the course of the Project.” The affidavit further stated that the supplemental agreement “ordered Bovis to expressly accelerate work by doubling manpower and resources in order to achieve final completion by December 31, 2007 — an acceleration of 163 days.” To the extent relevant to this appeal, the court granted *145 plaintiff’s motion for reargument, and upon reargument, amended its prior order “only to the extent that the damages sought in the third claim . . . for any remaining amounts due and unpaid under the parties’ original lump sum Contract, dated October 2005, including overhead and profit and insurance, are reinstated.”
The claims on this appeal are governed by the terms of the contract and other agreements at issue. “[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms” (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). This is especially true where, as here, the parties are sophisticated business entities represented by counsel (see Ashwood Capital, Inc. v OTG Mgt., Inc., 99 AD3d 1, 7 [1st Dept 2012]). Further, an agreement should be read as a whole and its individual provisions considered within their greater context (see South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005]).
Bovis claims that the plain language of the contract entitles it to payment for work that was not included in the original scope of work set forth in the contract, and challenges the motion court’s conclusion that payment was not recoverable without the issuance of a change order by LMDC. It further claims that nothing on the contract’s face indicated that the parties contemplated the possibility of the type of regulatory delays and interference it encountered, which caused it to expend far more resources than it originally anticipated.
With respect to LMDC’s position that written change orders were required to authorize extra work based on regulatory interference, Bovis first asserts that the provision requiring a written change order can only refer to work initiated by Bovis, and to hold otherwise would be to interpret the provision in a commercially unreasonable manner. Bovis argues that because the extra work was constructively initiated by LMDC when it permitted the regulators to assert themselves in such an aggressive manner, no change order was necessary. Based on the plain language of the contract, we disagree. Nothing in the change order provision suggests that LMDC is not entitled to insist on a change order even for work it directs that falls outside the scope of the contract. Indeed, it is perfectly logical that LMDC would require a written change order for all such work, to eliminate any uncertainty over precisely what it was agreeing to pay extra for. Bovis cites cases such as Joseph F. *146 Egan, Inc. v City of New York (17 NY2d 90 [1966]) and Tridee Assoc. v New York City School Constr. Auth. (292 AD2d 444 [2d Dept 2002]) in support of its contention that a contractor can waive the requirement that extra work be authorized by a written change order. However, nowhere in its pleading or in its supporting affidavits has Bovis alleged facts that, if proved, would establish that LMDC knowingly relinquished the right to insist on a change order.
Bovis also ignores the fact that the contract expressly bars payment to it by LMDC of any amounts above the lump sum without either LMDC’s agreement that the work falls within the definition of extra work (confirmed by the issuance of a change order) or a formal and timely declaration by Bovis that it disputes LMDC’s position that the work it was ordered to perform is not extra work. Here, Bovis has not pleaded, nor can it plead, that it received a change order for extra work. Further, it has not alleged, except with respect to work covered by the supplemental agreement, for which the requirement was waived, that it complied with the contractual requirement that, within 72 hours of being ordered to perform work that LMDC deemed within the original scope of work, it notify LMDC of its contrary position that the work qualified as extra work.
In any event, Bovis was not entitled to a change order for the extra work it sought as a result of regulatory interference, regardless of whether that work was subject to the supplemental agreement. That is because the definition of extra work in the contract expressly excluded work necessitated by any change in “Legal Requirements,” which included any “standard or procedure enacted, adopted or applied by any Governmental Authority,” even if a directive to comply with such a standard or procedure was not written. No reasonable interpretation of that definition permits any conclusion other than that the meticulous regulatory inspections Bovis was forced to tolerate did not create a right to compensation for extra work. That the interference did not lead to a claim for extra work is further established by the exclusion from the definition of extra work of “[w]ork required by reason of any risk or obligation assumed by [Bovis] in any part of the Contract Documents.” Here, Bovis expressly assumed “[t]he risk of all regulatory and other Governmental Authority delays.”
LMDC argues that, besides being barred because it does not qualify as extra work, Bovis’s claim for additional compensation based on regulatory interference is not allowed under the *147 contract because it constitutes damages for delay. Such damages are unquestionably precluded by the contract. Bovis contends, however, that the no damages for delay clause is unenforceable because the parties could not have foreseen the delays encountered on this project.
“A clause which exculpates a contractee from liability to a contractor for damages resulting from delays in the performance of the latter’s work is valid and enforceable and is not contrary to public policy if the clause and the contract of which it is a part satisfy the requirements for the validity of contracts generally” (Corinno Civetta Constr. Corp. v City of New York, 67 NY2d 297, 309 [1986]).
However, such a clause may be disregarded under certain recognized exceptions, including one for delays that are “uncontemplated” (see id.). Delays are not considered uncontemplated when they “are reasonably foreseeable, arise from the contractor’s work during performance, or . . . are mentioned in the contract” (id. at 310). Further, a party seeking to invoke any of the exceptions to the general rule that no damages for delay clauses are enforceable bears a heavy burden (LoDuca Assoc., Inc. v PMS Constr. Mgt. Corp., 91 AD3d 485, 485 [1st Dept 2012]).
Here, Bovis failed to carry its heavy burden. The contract specifically anticipated the possibility that the involvement of regulators would delay the process. Again, Bovis expressly acknowledged that it assumed the “risk of all regulatory and other Governmental Authority delays.” Certainly this lifted the no damages for delay clause out of the exception for uncontemplated delays. There is no basis for Bovis to argue that by alleging that the extent of the regulatory delays was extreme and unprecedented it stated a claim for delay damages. As this Court has stated in finding a no damages for delay clause enforceable, “[W]hile the conditions themselves may not have been anticipated, the possibility, however unlikely, of their arising was contemplated and addressed by the parties in their agreement” (Blau Mech. Corp. v City of New York, 158 AD2d 373, 375 [1st Dept 1990] [internal quotation marks omitted]).
Bovis separately claims that it should be compensated for extra resources it was forced to devote to the project based on LMDC’s insistence that it complete its work by December 31, 2007, the date specified in the supplemental agreement. It first asserts that LMDC “expressly” accelerated the project when it *148 insisted, in the supplemental agreement that Bovis meet the new deadline set forth therein. It further claims that LMDC “constructively” accelerated the project because it refused to entertain Bovis’s requests for more time based on excusable delay. Thus, it argues, by holding Bovis to the original completion date (as adjusted by agreement of the parties), LMDC ignored reality and placed Bovis in an untenable position.
Bovis has not stated a claim for “express” acceleration because nowhere does it allege that LMDC gave it the requisite “notice” required by the contract to complete the project before the date the parties had otherwise agreed on. Certainly the supplemental agreement did not constitute such “notice,” since it extended the completion date rather than shorten it. Bovis also fails to allege facts necessary to sustain a cause of action based on “constructive” acceleration, to the extent such a claim even exists. The Court of Appeals observed in Corinno Civetta, that “[a] 11 delay damage claims seek compensation for increased costs . . . whether the costs result because it takes longer to complete the project or because overtime or additional costs are expended in an effort to complete the work on time” (67 NY2d at 313-314). Accordingly, in that case the Court rejected a contractor’s attempt to distinguish between extra costs it incurred because the project went beyond the anticipated completion date (which it conceded were barred by a no damages for delay provision) and costs it incurred in an attempt to bring the job in on time. Likewise, it is of no moment that Bovis’s request to complete the project by December 31, 2007 constituted “acceleration” based on its theory that the delays caused by government regulators should have resulted in LMDC’s granting it a later completion date. Simply put, the no damages for delay clause bars Bovis from recovering any money from LMDC as a result of delay.
Finally, Bovis asks us to “correct [an] ambiguity” in the portion of the order that granted reargument and, upon reargument, reinstated the third cause of action “to the limited extent that damages for any remaining amounts due and unpaid under the original lump sum Contract, such as line items listed in the Contract’s Schedule of Values for overhead and profit, and insurance, are not dismissed.” Bovis asserts that the order is ambiguous about which costs it sought in the third cause of action, and that this Court should make clear that Bovis is entitled to damages to cover any insurance costs incurred by it, other than incremental insurance costs related to the fire, which the *149 January 8, 2008 letter argument stated were not recoverable by Bovis.
LMDC counters that there is no basis to “clarify” the second order on this point, because the first order dismissed Bovis’s claim seeking insurance costs, and the court did not change that determination upon reargument. We agree with LMDC. The court’s first order properly dismissed Bovis’s claim seeking damages for its insurance costs other than incremental fire-related insurance costs. As the court explained, dismissal of that claim was warranted by the provision of the contract flatly stating that Bovis must bear the costs of its own insurance.
Moreover, contrary to Bovis’s argument, the text of the January 8, 2008 letter agreement does not support its position. Bovis focuses on a provision of that agreement stating that LMDC has no liability for incremental fire-related insurance, and argues that this provision implies that LMDC is liable for all non-fire-related insurance costs incurred by plaintiff. However, there is no affirmative language in the letter agreement even suggesting that the contract’s requirement that Bovis pay insurance costs has been superseded. To the contrary, the letter agreement states that Bovis and the new subcontractor remained bound by the contract, specifically emphasizing that “all financial terms” continue to bind Bovis. The contract, in turn, provides that Bovis is liable for the costs of its own insurance, extensively setting forth the types of insurance it was required to obtain and also requiring it to name LMDC as an additional insured. Had the parties intended to effect such a significant change to the contract by revoking its general provision regarding Bovis’s obligation to procure insurance, it can be presumed that they would have expressed that intent in clear language rather than implying it through a provision mentioning only incremental fire-related insurance.
Indeed, these highly sophisticated parties otherwise negotiated a comprehensive agreement that reflected their careful allocation of costs and of the risk that circumstances would lead to substantial cost overruns. Bovis generally accepted the financial burden of such risk. That the deal Bovis made turned out to be a poor one is not something this Court can remedy, since the agreement was fairly negotiated and unambiguous. Moreover, Bovis had not one, but two, opportunities to renegotiate based on cost overruns, when it entered into the supplemental agreement and the January 8, 2008 letter agreement, both of which afforded it extra compensation. Now Bovis is bound by *150 the parties’ agreements, and LMDC is entitled to the benefit of its bargain.
Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered May 10, 2011, which, to the extent appealed from, granted defendant’s motion to dismiss the claims for damages for extra work allegedly resulting from changes in the scope of work and for damages arising out of defendant’s alleged acceleration of plaintiffs work and plaintiffs insurance costs, and denied the motion to dismiss the claim for damages related to delay caused by alleged regulatory interference, should be modified, on the law, to grant the motion to dismiss the claims for damages based on delay, and otherwise affirmed, without costs. The appeal from the order, same court and Justice, entered April 6, 2012, upon reargument, should be dismissed, without costs, as academic.
Gonzalez, P.J., Renwick, Richter and Gische, JJ., concur.
Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered May 10, 2011, modified, on the law, to grant the motion to dismiss the claims for damages based on delay, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered April 6, 2012, dismissed, without costs, as academic.