**Ruth KAMERMAN, Executrix of the Estate of Norman Kamerman, Plaintiff–Appellant,**

**v.**

**Saul STEINBERG, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., Reliance Insurance Company, and Walt Disney Productions, Inc., Defendants– Appellees.**

**No. 1021, Docket 89–7054.**

United States Court of Appeals, Second Circuit.

Argued April 17, 1989.

Decided Dec. 6, 1989.

**425**

Irving Malchman, New York City (Kaufman, Malchman, Kaufmann & Kirby, New York City, of counsel), for plaintiff-appellant.

Lewis A. Kaplan, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, Blair C. Fensterstock, Reliance Group Holdings, Inc., New York City, of counsel), for defendants-appellees.

Before VAN GRAAFEILAND, ALTIMARI and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Ruth Kamerman ("Kamerman"), executrix of the estate of Norman Kamerman, the original plaintiff, alleges that defendant-appellee Saul Steinberg ("Steinberg"), in concert with defendants-appellees Reliance Group Holdings, Inc. ("RGH"), Reliance Group Inc. ("RG"), Reliance Financial Services Corp. ("RFS") and Reliance Insurance Company ("RIC") (collectively "Reliance"), companies in which Steinberg holds a controlling interest,[1] "greenmailed" defendant-appellee Walt Disney Productions, Inc. ("Disney"), a company of which Kamerman is a shareholder, by purchasing a large block of Disney stock and then, following the threat of a hostile tender offer, selling that stock to Disney at a substantial premium over market.

This appeal, arising from a consolidated action below, is taken from a judgment of the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge*, which dismissed Kamerman's (1) derivative claim brought on behalf of Disney seeking rescission and related injunctive relief on the basis that Reliance filed materially false Schedule 13D forms which failed to disclose its intention to greenmail Disney, in violation of sections 10(b) and 13(d) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b) (1982) and 15 U.S.C.A. § 78m(d) (West 1981 & Supp.1989), and Rules 10b–5 and 13d–101 promulgated thereunder, 17 C.F.R. §§ 240.10b–5, 240.-13d–101 (1988); (2) derivative and individual claim[2] for injunctive relief requiring Reliance to correct the Schedule 13D filings made for each purchase of Disney stock to state that the basic and primary purpose of the purchases was to greenmail Disney; and (3) derivative state claim for rescission and related injunctive relief for duress and coercion in connection with Disney's purchase of its common stock from Reliance.

The district court dismissed Kamerman's derivative securities fraud claims after finding that Disney was not deceived by the Schedule 13D filings. The district court dismissed as moot Kamerman's claim demanding that Reliance amend its Schedule 13D filings, since Reliance had already sold all of its shares of Disney stock. Finally, the district court dismissed Kamerman's state law claim for rescission based upon duress and coercion because Reliance's alleged threat to make a tender offer involved only a legal corporate action.

We affirm.

## BACKGROUND

### A. *The Transactions.*

Reliance began investing in Disney's common stock in the spring of 1984. A

---

1. RIC is a wholly owned subsidiary of RFS, which itself is a wholly owned subsidiary of RG, which in turn is a wholly owned subsidiary of RGH. All of the common voting stock of RGH is owned by or for the benefit of Steinberg and members of his family.

2. Although the parties here and below, and the district court, refer to this claim as exclusively individual, it is pleaded in Kamerman's complaint as a derivative and individual claim.

Schedule 13D was filed with the Securities and Exchange Commission ("SEC") on March 29, 1984 in accordance with section 13(d) of the Act, 15 U.S.C.A. § 78m(d) (West 1981 & Supp.1989), announcing that Reliance had acquired 2,162,644 shares (6.3%) of Disney's common stock. As required, Reliance disclosed its purpose in purchasing the shares, stating the following:

> The Securities listed in Item 5 herein were purchased for investment as part of the general investment portfolios of the Purchasers listed therein.
>
> Subject to availability and price and subject to applicable laws and regulations, the Purchasers may increase their holdings but also reserve the right to dispose of all or a portion of such Securities on terms and at prices determined by them.
>
> While the Purchasers have no present intention of participating in the formulation, determination or direction of the basic business decisions of the Issuer, the Purchasers reserve the right at any time to cease being passive investors if in their judgment such action becomes necessary or desirable to protect or enhance the value of their investment in the Issuer. In the event that the Purchasers cease being passive investors, a Notification and Report Form under the Hart–Scott–Rodino Antitrust Improvements Act of 1976 will have to be filed, and the applicable waiting period expire, before additional purchases of voting securities of the issuer may be made by the Purchasers.

Reliance increased its investment in Disney over the next several weeks. The increases were reflected in appropriate amendments to the original Schedule 13D. Amendment No. 1 dated April 2, 1984 disclosed that Reliance had increased its holding to 2,507,708 shares (7.3%) of Disney's common stock. Amendment No. 2 dated April 10, 1984 disclosed a total accumulation of 2,852,933 shares (8.3%). Amendment No. 3 dated April 12, 1984 showed that Reliance had brought its total to 3,198,233 shares (9.3%). None of these amendments reflected a change in the purpose of the transaction from that which was asserted in the original Schedule 13D.

On April 25, 1984, however, Reliance filed a fourth amendment to the Schedule 13D indicating no new acquisitions of stock, but revealing that a Notification and Report Form was being filed pursuant to the Hart–Scott–Rodino Antitrust Improvements Act of 1976 with respect to the acquisition of up to 5,467,000 additional shares of Disney common stock. Such an acquisition, if consummated, would have raised Reliance's share of Disney common stock to approximately twenty-five percent.

Amendment No. 5 to the Schedule 13D, dated May 2, 1984, disclosed that Reliance had purchased one million shares of Disney stock in a single block trade, thus bringing Reliance's total investment to 4,198,233 shares (12.2%) of Disney's stock. This amendment did not indicate any change in the purpose of the transaction from that which was previously stated.

On May 17, 1984, Disney announced that it was acquiring a Florida real estate company, the Arvida Corporation ("Arvida"), in exchange for between 2,649,007 and 3,809,524 shares of Disney common stock. Reliance thereupon filed Amendment No. 6 to its Schedule 13D, dated May 25, 1984, which stated:

> In light of the proposed Arvida purchase, and recent public statements of the Issuer, the Purchasers have concluded that in order to protect the value of their investment in the Issuer they cannot continue to be merely passive investors, trusting that the Issuer's management and Board will act to serve and protect the best interests of all shareholders. While no determination as to a specific course of action has yet been made, the Purchasers are considering obtaining control of the Issuer through one or more of the following: (i) a tender or exchange offer or a merger or other corporate reorganization ..., (ii) acquiring additional shares [of Disney common stock] in brokerage or private transactions, or (iii) a proxy solicitation to

replace the Issuer's incumbent Board of Directors.

．　　．　　．　　．　　．

The Purchasers have been notified by the Federal Trade Commission that the waiting period under the Hart–Scott–Rodino Antitrust Improvements Act of 1976 has been terminated. Consequently, the Purchasers may acquire up to 49.9% of the outstanding shares of the Issuer without any additional notice or waiting period under such Act.

The seventh amendment to Reliance's Schedule 13D, dated May 28, 1984, stated the following:

The Purchasers have determined to seek removal of the Issuer's Board of Directors and expect, following the filing with the Securities and Exchange Commission of proxy materials under the Securities Exchange Act of 1934, to solicit consents of the Issuer's shareholders for such purpose. . . .

The Purchasers have also determined to seek to enjoin the Issuer's Board of Directors from causing the Issuer to purchase or otherwise acquire Arvida Corporation. . . .

On June 6, 1984, Disney agreed to acquire Gibson Greetings, Inc., a greeting card company, in exchange for between 4,485,021 and 6,210,029 shares of Disney common stock. Reliance then filed its eighth amendment to the Schedule 13D, dated June 8, 1984, which stated:

The Purchasers have determined to seek control of the Issuer by acquiring at least 49% (including shares already owned) of the Securities outstanding. Subject to completion of documentation for the financing, a cash tender offer (the "Tender Offer") will be made for 49% of the Securities outstanding by MM Acquisition Corp., a subsidiary of RGH formed for such purpose. Following the Tender Offer, the Purchasers will seek to effect a merger or other business combination (the "Merger") between MM Acquisition Corp. and the Issuer. The Purchasers anticipate that shareholders of the Issuer would receive cash and/or securities in the Merger valued at the same price per share as paid in the Tender Offer. The Purchasers still expect to solicit consents of the Issuer's shareholders for the removal of the Issuer's Board of Directors.

The same day, Reliance advised Disney by letter of Reliance's intention to initiate a cash tender offer for forty-nine percent of Disney's common stock at $67.50 per share, to be increased to $72.50 per share in cash and securities for all of Disney's outstanding shares if Disney agreed to endorse the tender offer, terminate the proposed acquisition of Gibson Greetings, Inc., and eschew further such corporate transactions until the tender offer was completed.

Negotiations ensued over the weekend of June 8–10, 1984 with respect to a repurchase by Disney of the Disney common stock owned by Reliance. Reliance and Disney, as well as three other parties engaged with Reliance in its tender offer, then entered into a letter agreement dated June 11, 1984 (the "Buyback Agreement") providing, *inter alia,* for (1) the payment to Reliance of $70.83 per share for its holdings of Disney common stock; (2) the further payment of twenty-eight million dollars to Reliance in reimbursement of "expenses incurred in connection with its actual and contemplated purchases" of Disney common stock; (3) the termination of certain litigation previously initiated against Disney by Reliance; and (4) a commitment by Reliance not to acquire Disney stock or otherwise seek to control or influence Disney for ten years. Kamerman alleges that this transaction resulted in a profit to Reliance of approximately sixty million dollars (including reimbursement of expenses). The $70.83 per share purchase price substantially exceeded the market price of Disney common stock on June 11, 1984.

Reliance then filed a final amendment to its Schedule 13D, dated June 13, 1984, which transmitted the Buyback Agreement as an enclosure and stated that:

On June 11, 1984, the Purchasers sold all 4,198,333 shares of the Security beneficially owned by them to the Issuer for $70.83 per share in a private transaction. As a result, Reliance Financial ceased to

be the beneficial owner of more than 5% of the Securities outstanding and does not beneficially own any shares of the Security.

## B. *Legal Proceedings.*

This lawsuit was then filed in the United States District Court for the Southern District of New York, and was consolidated for all purposes with three class actions (including one initiated by Norman Kamerman) which challenged the same Disney–Reliance transaction by order entered August 27, 1984.[3] *See Kamerman v. Steinberg*, 113 F.R.D. 511, 513 n. 1 (S.D.N.Y. 1986). By order dated November 12, 1987, the district court granted summary judgment to Reliance dismissing Kamerman's state law claim of coercion and duress. In a subsequent opinion filed March 3, 1988, the district court explained that "[t]ender offers are perfectly legitimate corporate maneuvers, and 'it is not duress to threaten to take action which is legally permissible.' " *Kamerman v. Steinberg*, 681 F.Supp. 206, 215 (S.D.N.Y.1988) (quoting *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 593 n. 4, 431 N.E.2d 278, 285 n. 4, 446 N.Y.S.2d 917, 924 n. 4 (1981)).

In a later unpublished order and opinion, the district court granted Reliance's motion for summary judgment dismissing the federal derivative claims, holding:

> Plaintiffs [sic] cannot bring the federal securities claims on Disney's behalf unless the company *itself* was victimized through some misrepresentation by Defendants in connection with the buy-back of Steinberg's Disney stock....
>
> ... Viewed this way, it would be silly to say that Steinberg concealed his plan to resell his shares to Disney at a premium since that is exactly what happened.

*Kamerman v. Steinberg*, 123 F.R.D. 66, 68–69 (S.D.N.Y.1988).

With respect to the claim for corrective disclosures, the district court ruled, in a later unpublished opinion, that:

> The sale by Steinberg of all his Disney holdings back to Disney moots out any question of the propriety of granting an injunction requiring him to correct the 13D filings related to the purchase and sale of that Disney stock. *See Trane Company v. O'Conner [sic] Securities*, 718 F.2d 26 (2d Cir.1983).

*Kamerman v. Steinberg*, No. 84 Civ. 4440, slip op. at 23, 1988 WL 140743 (S.D.N.Y. Dec. 20, 1988).

An "Order of Dismissal and Final Judgment" was then entered dismissing the claim for corrective disclosure, and further providing:

> 2. The complaint in this action is dismissed in its entirety on the merits, with prejudice and without costs; and
>
> 3. The Clerk of the Court is directed to enter forthwith final judgment dismissing the complaint in its entirety on the merits, with prejudice and without costs.

*Kamerman v. Steinberg*, 84 Civ. 4550 (S.D.N.Y. Dec. 19, 1988).

Apparently, no subsequent final judgment was entered by the clerk of the district court. Kamerman filed a timely notice of appeal "from an order and final judgment of the Court dated December 19, 1988, granting defendants' motion for summary judgment and dismissing the complaint, and from each and every part thereof."

## DISCUSSION

### A. *Jurisdiction of the Appeal.*

■ Before turning to the merits, we examine first our jurisdiction to hear this appeal. In this action, the district court dismissed the complaint in its entirety on the merits, and directed the entry of a final judgment to that effect.[4] Under normal

---

**3.** A fourth additional case was apparently consolidated with this case subsequently, judging by the caption of certain district court opinions and orders in this litigation, but the docket entries for this case provided to us do not reflect the subsequent consolidation.

**4.** The fact that apparently no separate final judgment was subsequently entered, as envisioned in the Order of Dismissal and Final Judgment entered December 19, 1988, is without jurisdictional significance. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 382–88, 98 S.Ct. 1117,

circumstances, this final decision would be immediately appealable pursuant to 28 U.S.C. § 1291 (1982). As indicated earlier, however, this case previously was consolidated with several class actions arising out of the same alleged greenmail of Disney. At the time of this appeal, these class actions were still pending before the district court.

During oral argument of this appeal, we requested that the litigants file letter briefs concerning the appealability of this action in light of *Hageman v. City Investing Co.*, 851 F.2d 69 (2d Cir.1988), where an appeal was dismissed for lack of appellate jurisdiction, in the absence of a certification pursuant to Fed.R.Civ.P. 54(b),[5] because there remained pending in the district court an action with which the case on appeal was consolidated.

In *Hageman*, a discharged employee filed two separate *pro se* actions against his employer, the Home Insurance Company ("HIC"), in federal court. In the first action, Hageman alleged a violation of the Age Discrimination in Employment Act. Approximately ten months later, he filed a second action against HIC and several other defendants alleging, *inter alia*, a violation of the Employee Retirement Income Security Act ("ERISA"). These two actions were subsequently consolidated by the district court. The district court thereafter granted defendants' motions for dismissal and/or summary judgment with respect to all of plaintiff's claims except the ERISA violation, which remained to be tried. The district court did not direct entry of final judgment with respect to any of the claims that were dismissed, and no Fed.R.Civ.P. 54(b) certification was requested. Nonetheless, Hageman filed a notice of appeal. 851 F.2d at 70.

On appeal, we examined the question "whether, in a consolidated action, a judgment that does not dispose of all claims is a final decision within the purview of section 1291 absent certification under Fed.R. Civ.P. 54(b)." *Id.* at 71. This question had not been previously considered by this circuit, but six other circuits had addressed the question, two answering the question in the affirmative, two in the negative, and two adopting a case-by-case approach. *See id.*

After assessing these varying positions, we concluded that:

> the best way to weigh these competing benefits of an absolute rule and a more flexible approach is to hold that when there is a judgment in a consolidated case that does not dispose of all claims which have been consolidated, there is a strong presumption that the judgment is not appealable absent Rule 54(b) certification. In highly unusual circumstances, a litigant may be able to overcome this presumption and convince us that we should consider the merits of the appeal immediately, rather than waiting for a final judgment.

*Id.*

In the instant appeal, Kamerman now contends that no "highly unusual circumstances" are presented to overcome the "strong presumption" against appealability, and that no Rule 54(b) certification can be implied in view of this court's "insist[ence] that the District Court's Rule 54(b) determination be made in the words of the Rule." *See, e.g., Davis v. National Mortgage Corp.*, 320 F.2d 90, 91 (2d Cir. 1963) (no rule 54(b) certification found despite express direction by district court for entry of judgment).

Reliance argues that because (1) the case on appeal is the only one of the consolidated cases that presents derivative claims; (2) the judgment on appeal decides all such claims in favor of all defendants; and (3) the district court clearly intended final

1118–22, 55 L.Ed.2d 357 (1978); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 499 n. 1 (2d Cir.1989).

**5.** Rule 54(b) states in pertinent part:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

judgment to be entered with respect to those claims, this case presents highly unusual circumstances of the type excepted from the strong presumption of nonappealability mandated by *Hageman.* As to the third factor, Reliance points particularly to the following language in the district court's unpublished opinion dated December 20, 1988:

> Since our decision disposes of the final remaining claim in the Kamerman derivative suit, this Court grants summary judgment on the derivative complaint in full and will enter final judgment for the Defendants on all claims contained in 84 Civ. 4550. An order to that effect will accompany this opinion.

*Kamerman v. Steinberg,* 84 Civ. 4440, slip op. at 3 (S.D.N.Y. Dec. 20, 1988).

We agree with Reliance's argument, conclude that we have jurisdiction of this appeal, and proceed to the merits.

### B. *The Section 13(d) Claim.*

■ Kamerman's complaint alleges that "[t]he Schedule 13Ds, and various amendments thereto, filed with the SEC by defendants ... falsely and misleadingly omitted the material fact that it was the basic and primary purpose of defendants to sell their Disney stock back to Disney at a substantial premium above the abnormally high market prices at which Disney stock was trading" as a result of Reliance's purchases of Disney stock.

Section 13(d) requires any person acquiring more than five percent of specified classes of equity securities to send to the issuer thereof and the exchanges on which the security is traded, and file with the SEC, a Schedule 13D as prescribed by 17 C.F.R. § 240.13d-101 (1988). These schedules elicit, among other information, the filing person's purpose in acquiring the security, and are "intended to alert investors to potential changes in corporate control so that they could properly evaluate the company in which they had invested or were investing." *GAF Corp. v. Milstein,* 453 F.2d 709, 720 (2d Cir.1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972).

One complaining of a false or misleading statement in a Schedule 13D may seek damages only under Section 18(a) of the Act, 15 U.S.C. § 78r(a) (1982). *Sanders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945, 960 (S.D.N.Y.1983), *aff'd,* 730 F.2d 910 (2d Cir. 1984) (per curiam) (adopting district court opinion). Section 18(a) provides in pertinent part:

> Any person who shall make or cause to be made any statement in any ... document filed pursuant to this chapter or any rule or regulation thereunder ..., which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

15 U.S.C. § 78r(a) (1982).

Since Kamerman sues derivatively on behalf of Disney, she stands in Disney's shoes. Accordingly, in order to prevail on her section 18(a) claim, she must establish that Disney's purchase of its stock from Reliance was made in reliance upon false or misleading statements in Reliance's Schedule 13D filings. In the language of her own brief, however, Kamerman "does not claim that Disney was deceived by the false 13Ds." Accordingly, this claim was properly dismissed.

### C. *The Rule 10b-5 Claim.*

Kamerman also makes a derivative claim under section 10(b) of the Act and Rule 10b-5 promulgated thereunder. Section 10(b) forbids the use of "any manipulative or deceptive device or contrivance in contravention of" pertinent rules and regulations promulgated by the SEC. 15 U.S.C. § 78j(b) (1982). Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any

means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1988).

Kamerman's 10b–5 derivative claim alleges that the assertedly false statements of purpose in Reliance's Schedule 13D filings constituted violations of Rule 10b–5. In order to recover upon such a claim, however, a plaintiff must have purchased or sold stock in reliance upon the alleged misrepresentation by the defendant. *See, e.g., Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 92–94 (2d Cir. 1981). As with the Section 13(d) claim, Kamerman concedes that Disney was not deceived, a fact that would appear to doom her Rule 10b–5 claim. She contends, however, that she has stated a good Rule 10b–5 claim under the authority of *Goldberg v. Meridor*, 567 F.2d 209 (2d Cir.1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). Specifically, according to Kamerman, "Goldberg establishes that, where the shareholders are deceived so that they do not act to enjoin a securities transaction harmful to their corporation, Rule 10b–5 is violated."

In *Goldberg,* self-interested directors of a subsidiary cooperated in the subsidiary's acquisition, for stock, of the assets and liabilities of its parent in a transaction in which it was alleged that the parent's financial condition had been dramatically misrepresented. *See* 567 F.2d at 212 n. 1. We have since construed *Goldberg* as establishing that "where the remedy of an injunction is needed (and is available under state law) to prevent irreparable injury to the company from willful misconduct of a self-serving nature, disclosure of facts necessary to make other statements not misleading is required where the misleading statements will lull shareholders into forgoing the injunctive remedy." *Field v. Trump*, 850 F.2d 938, 948 (2d Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1988). We deem this rule to have no application here, where the alleged misrepresentations were made by Reliance, not Disney, and the facts alleged by Kamerman simply fail to meet the *Goldberg* requirements as glossed in *Field v. Trump.*

Accordingly, Kamerman's derivative section 10(b) claim fails because Disney was not deceived when it bought its stock from Reliance.

### D. *The Claim for Corrective Disclosure.*

■ Kamerman's complaint also requests that an injunction be granted requiring Reliance to amend its 13D filings to reflect that its "basic and primary purpose in purchasing Disney's stock was to sell the stock back to Disney for a premium above market price." We agree with the district court that in view of Reliance's sale to Disney of Reliance's holdings of Disney stock, our decision in *Trane Co. v. O'Connor Securities*, 718 F.2d 26 (2d Cir.1983), precludes the injunctive relief which Kamerman seeks.

### E. *Derivative State Law Claim for Duress and Coercion.*

■ Kamerman seeks to have the Buyback Agreement rescinded on grounds of duress and coercion. New York law, which governs the question, establishes the following elements of economic duress:

(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.

*Gulf & W. Corp. v. Craftique Prods., Inc.*, 523 F.Supp. 603, 610 (S.D.N.Y.1981). Here, Kamerman asserts that Reliance improperly threatened a tender offer. As the dis-

trict court correctly concluded, however, "it is not duress to threaten to take action which is legally permissible." *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 593 n. 4, 431 N.E.2d 278, 285 n. 4, 446 N.Y.S.2d 917, 924 n. 4 (1981). Tender offers are legal corporate actions. Accordingly, this claim also fails.

### F. *Sanctions.*

Reliance seeks sanctions against Kammerman for a frivolous appeal pursuant to Fed.R.App.P. 38 and 28 U.S.C. § 1912 (1982). Although we decide this appeal adversely to Kamerman, we do not regard it as so lacking in merit as to warrant sanctions. *Cf. Paulson v. United States*, 758 F.2d 61, 62 (2d Cir.1985) (per curiam) (appellant's position "entirely without merit"); *In re Hartford Textile Corp.*, 659 F.2d 299, 303 (2d Cir.1981) (appeal "frivolous and wholly lacking in merit"), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

### CONCLUSION

The judgment of the district court is affirmed.