TEACHERS INSURANCE AND
ANNUITY ASSOCIATION OF
AMERICA, Plaintiff,

v.

WOMETCO ENTERPRISES, INC.,
Arthur H. Hertz, Michael S.
Brown, Defendants.

WOMETCO ENTERPRISES, INC., Arthur H. Hertz, Michael S. Brown,
Third–Party Plaintiffs,

v.

STEEL, HECTOR & DAVIS, a Florida
General Partnership, Third–Party
Defendant.

No. 90 Civ. 7717 (JES).

United States District Court,
S.D. New York.

Sept. 22, 1993.

Fried, Frank, Harris, Shriver & Jacobson, New York City (John Sullivan, of counsel), for plaintiff.

Wolver and Wolver, Woodland Hills, CA (Betsy Handler, of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff in the above-captioned action moves for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, that motion is granted.

## BACKGROUND

Defendant Wometco Enterprises, Inc., (hereinafter, together with its Chief Executive Officer, defendant Arthur H. Hertz, and Chief Operating Officer, defendant Michael S. Brown, referred to as "Wometco"), was formed out of a June, 1985 leveraged buyout of all outstanding shares of the capital stock of WEI Corporation and certain assets of WBC Broadcasting Corporation, including a food service business, movie theaters and a marine exhibition facility in Miami (the "Seaquarium"). *See* Defendants's Statement pursuant to Local Civil Rule 3(g) of the United States District Courts for the Southern and Eastern Districts of New York ("Defs.' 3(g) Statement"), ¶¶ 1–2; Affidavit of John Sullivan sworn to March 19, 1992 ("Sullivan Aff."), Ex. 1.[1] That purchase cost $54.4 million and was financed by loans from two sources: a consortium of commercial banks in return for $50 million in senior debt instruments (the "senior lenders"), and Teachers Insurance and Annuity Association of America ("plaintiff" or "TIAA"). Defs.' 3(g) Statement, ¶¶ 1, 3.

On May 31, 1985, Wometco entered into a Note, Stock and Warrant Purchase Agreement (the "Loan Agreement") with TIAA,

---

1. Defendants have submitted a statement of undisputed material facts, although Local Rule 3(g) requires them, as the parties opposing summary judgment, to submit a statement of disputed material facts. In any event, since defendants characterize these facts as undisputed, the Court will regard them as such for purposes of this motion.

according to which TIAA loaned Wometco $6,000,000 in return for a subordinated interest-bearing note and a warrant to purchase 60,000 shares of Wometco common stock. Defs.' 3(g) Statement, ¶ 5; Sullivan Aff., Ex. 4. Under the Loan Agreement, TIAA also agreed to purchase 100,000 shares of common stock (26,315 shares of Class A common and 73,685 shares of Class C common) at $5 per share represented by two stock certificates representing the two classes of common stock. Defs.' 3(g) Statement, ¶ 5; Sullivan Aff., Exs. 1–3.

The Loan Agreement further required Wometco periodically to provide TIAA with reasonably detailed financial information as to Wometco's financial condition and granted TIAA a right to fully inspect Wometco's properties and financial records. Defs.' 3(g) Statement, ¶¶ 9–11; Sullivan Aff., Ex. 1, ¶¶ 8.1, 8.6. With certain exceptions not relevant here, the Loan Agreement also prohibited Wometco or its subsidiaries from consolidating or merging its assets with another corporation, from disposing in any way of its assets or from incurring additional debt. Sullivan Aff., Ex. 1, ¶¶ 9.2, 9.10. Finally, the Loan Agreement provided that the parties could amend, modify or waive the observance of any term only with TIAA's written consent. *Id.*, ¶ 19; Defs.' 3(g) Statement, ¶ 12.

Beginning in 1985 and continuing until March, 1989, Wometco defaulted on its payment obligations pursuant to the aforesaid agreement with TIAA which led the parties to enter into various amendments to that Loan Agreement.[2] By March, 1989, Wometco, unable to sell assets to meet its financial obligations and in default, negotiated a refinancing of its food service business instead. Defs.' 3(g) Statement, ¶ 19; Sullivan Aff., Ex. 16. Approaching the March 17, 1989 closing date of that refinancing transaction, TIAA insisted that Wometco agree to new terms in exchange for its consent to that refinancing. Defs.' 3(g) Statement, ¶¶ 21–24.

As a consequence, Wometco and TIAA executed a modification of the Loan Agreement (the "Modification Letter") under which TIAA agreed to waive the restrictions that prohibited the refinancing transaction of the food service business and the proposed refinancing and/or sale of its Seaquarium and further to waive all prior events of default by Wometco. Sullivan Aff., Ex. 21. In return, Wometco agreed to prepay the principal and accrued interest on TIAA's subordinated note plus a $2.2 million premium.[3] *Id.* Wometco also agreed to repurchase TIAA's holdings of Wometco common stock at $20.50 per share by September 30, 1989 or, if repurchased thereafter, to issue to TIAA a 12% senior note in the principal amount equal to $22.30 for each share of unrepurchased stock. *Id.*

Wometco proceeded to close the refinancing of the food service business on March 17, and applied the bulk of the proceeds to the senior debt. Defs.' 3(g) Statement, ¶ 25. On August 11, 1989, Wometco closed a refinancing of the Seaquarium and, with the proceeds, retired the senior debt, retired in full TIAA's subordinated note, paid the $2.2 million premium, and repurchased TIAA's stock warrant and 3,415 of TIAA's 100,000 shares of Wometco common stock at $20.50 per share for $1 million. *Id.*, ¶ 26. Wometco was unable, however, to repurchase in full

**2.** In November, 1985, Wometco first defaulted on its obligations. Sullivan Aff., Ex. 5. *See also* Affidavit of Betsy Handler sworn to July 22, 1992 ("Handler Aff."), Ex. 5 (default in 1986 as well). In September, 1987, TIAA and Wometco amended the Loan Agreement to require that, in return for waivers of the defaults, Wometco make a $10 million payment on the senior debt; to accomplish that, TIAA agreed to permit Wometco to sell assets or stock in segments of its business by June 30, 1988, the failure of which would constitute an event of default. Defs.' 3(g) Statement, ¶¶ 13–15; Sullivan Aff., Ex. 6, ¶¶ 3.2, 3.9. Wometco failed to make any sales pursuant to the amendment. Defs.' 3(g) Statement, ¶ 15. In anticipation of that default, TIAA again agreed to waive Wometco's default and to extend Wometco's deadline to make such a sale until September 15, 1988. *See* Sullivan Aff., Ex. 11. TIAA granted a further extension until November 15, 1988, *id.*, Ex. 14; Defs.' 3(g) Statement, ¶ 17, but Wometco again failed to meet the deadline.

**3.** The original Loan Agreement had provided that Wometco pay a premium only in the event it prepaid the loan before five years, later amended to six years, *see* Defs.' 3(g) Statement, ¶ 7; Sullivan Aff., Ex. 6, ¶ 3.1, but had provided for no such penalty if the loan was accelerated for any default. Defs.' 3(g) Statement, ¶ 6; Sullivan Aff., Ex. 1, ¶ 13.

TIAA's common stock holdings by the September 30, 1989, deadline. *Id.*, ¶ 27.

On April 1, 1990, Wometco and TIAA entered into an agreement (hereinafter "Purchase Agreement") whereby TIAA waived Wometco's failure to issue the aforementioned 12% senior note in the principal amount equal to the unrepurchased shares of stock multiplied by $22.30 per share. Sullivan Aff., Ex. 26. In return, Wometco promised to use "best efforts" to generate enough cash through asset sales to purchase TIAA's holdings at $22.30 per share by September 30, 1990, at $22.30 per share, and to pay 12% annual interest accrued after October 1, 1989. *Id.*

By letter dated September 4, 1990, Wometco requested a statement of amounts due to TIAA under the Purchase Agreement as of September 1, 1990. *Id.*, Ex. 27. TIAA responded by documenting the amounts owed at approximately $2.4 million. *Id.*, Ex. 28.

On October 9, 1990, after the September 30 deadline had passed without payment by Wometco, Wometco closed a sale of movie theaters it owned. Defs.' 3(g) Statement, ¶ 28. From those proceeds, Wometco paid $1,947,412 to each of its two senior officers, defendants Hertz and Brown, as creditors of the company, paid $1 million to TIAA, and placed the remaining $1.4 million owed to TIAA in a segregated account. *Id.*, ¶¶ 28–29. Wometco notified TIAA of its desire to negotiate the payment of that final portion due under the Purchase Agreement. Sullivan Aff., ¶ 30. On November 30, 1990, TIAA brought this action, later supplemented by an amended complaint, seeking specific performance of Wometco's obligation to make the promised payments, a declaratory judgment that TIAA has no liability to Wometco arising out of the aforesaid facts and that Wometco's anticipated defenses have no merit, as well as damages for fraud and breach of contract.

TIAA moves for summary judgment on its claim for breach of contract and on Wometco's nine counterclaims. Wometco contends that TIAA forced it to accept unduly harsh

new terms in the Modification Letter which amended the Loan Agreement, and that that conduct (1) constituted economic duress, (2) violated an implied contractual duty of good faith, (3) breached TIAA's fiduciary duty, (4) unlawfully interfered with Wometco's corporate governance, (5) unjustly enriched TIAA, and (6) breached the original Loan Agreement. Wometco also sought, (7) a declaratory judgment that, under the Modification Letter and the Purchase Agreement, TIAA is obligated to return money wrongfully received and that Wometco is not obligated to make any further payments, as well as, (8) specific performance seeking return of the Wometco stock certificates from TIAA, and (9) damages for breach of contract.

At Oral Argument, a subsidiary question was raised with respect to the economic duress argument, *i.e.*, whether a legal action existed for unreasonable withholding of consent where a contract is silent on that issue. The Court asked for and received supplemental briefing on that issue.

## DISCUSSION

Summary judgment is appropriate only where, resolving all ambiguities and drawing all reasonable inferences in favor of the non-moving party, the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Tested by that standard, plaintiff is entitled to summary judgment since none of the defenses asserted constitute a sufficient legal defense to TIAA's claims.

Defendants argue that plaintiff's threat to withhold consent to their refinancing of its food service business, which caused defendants to agree to the new terms contained in the Modification Letter amendment, constituted economic duress. New York law [4] has established the following ele-

---

4. The parties have agreed to let New York law govern all of their agreements. *See* Sullivan Aff., Ex. 1, ¶ 22; *id.*, Ex. 21, ¶ 17; *id.*, Ex. 26, ¶ 12.

ments of economic duress [5]: "(1) a threat, (2) which was unlawfully made, [which] (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." *Kamerman v. Steinberg,* 891 F.2d 424, 431 (2d Cir.1989).

■ In the instant case, the parties do not dispute that their original Loan Agreement required that Wometco obtain written consent from TIAA for the refinancing transaction. Plaintiff therefore argues that any refusal on its part to consent to Wometco's desire to incur additional debt cannot, as a matter of law, be unlawful, but rather constitutes no more than an assertion of its bargained-for right. The Court agrees. Threats by a party to act in accordance with its legal rights do not and cannot constitute duress. *See Kamerman,* 891 F.2d at 432; *DiRose v. PK Management Corp.,* 691 F.2d 628, 633 (2d Cir.1982), *cert. denied,* 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *Hammelburger v. Foursome Inn Corp.,* 54 N.Y.2d 580, 593 n. 4, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981); *Stewart M. Muller Constr. Co. v. New York Tel. Co.,* 40 N.Y.2d 955, 956, 390 N.Y.S.2d 817, 359 N.E.2d 328 (1976) (mem.). *See also Houston North Hosp. Properties v. Telco Leasing, Inc.,* 680 F.2d 19, *aff'd on reh'g,* 688 F.2d 408 (5th Cir.1982) (summary judgment affirmed rejecting debtor's claim of economic duress on

the basis that there was no unlawful threat where creditor, within its contractual rights, refused to release a lien necessary for debtor's refinancing unless debtor repaid creditor's loan at a premium).[6]

■ Moreover, even assuming, *arguendo,* that the Modification Letter was entered into under duress, defendants performed according to its terms for over eighteen months. Under New York law, a contract entered into under duress is voidable, not void, and a party who fails promptly to disaffirm a contract entered into under duress is deemed to have waived its right to disaffirm or to have elected to affirm it. *See DiRose v. PK Management Corp., supra,* 691 F.2d at 633–34; *International Halliwell Mines, Ltd. v. Continental Copper & Steel Indus., Inc.,* 544 F.2d 105, 108 (2d Cir.1976); *Scientific Holding Co. v. Plessey Inc.,* 510 F.2d 15, 23 (2d Cir.1974); *Joseph F. Egan, Inc. v. City of New York,* 17 N.Y.2d 90, 98, 268 N.Y.S.2d 301, 215 N.E.2d 490 (1966). In sum, the undisputed facts of this case establish that Wometco made a business decision to accept plaintiff's new terms since compliance with the original terms in the Loan Agreement presented a much less desirable financial alternative. After having operated under that agreement for more than eighteen months,

---

**5.** Though included as a counterclaim, economic duress is not recognized in New York as a cause of action, but is only a defense. *See Bank Leumi Trust Co. v. D'Evori Int'l,* 163 A.D.2d 26, 558 N.Y.S.2d 909, 914 (1st Dep't 1990).

**6.** The cases cited by defendants in support of their argument that plaintiff's conduct constituted economic duress, if anything, reaffirm plaintiff's argument that "it cannot be duress for a party to insist upon his legal rights." *See, e.g., First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626, 633 (2d Cir.1972). The Court is not persuaded by *Litten v. Jonathan Logan, Inc.,* 220 Pa.Super. 274, 286 A.2d 913, 918 (1971), cited by defendants at Oral Argument for the proposition that, under New York law, a party forced into a written modification of a prior oral contract under the threat of bankruptcy is permitted to recover on a theory of economic duress. The Court does not agree that that holding reflects a correct interpretation of New York law as the dissent in that case indicates. In any event, there can be no conceivable basis for a claim of economic duress where, as here, Wometco's financial difficulties were in no sense caused by

plaintiff's insistence on its legal rights and where plaintiff was, if anything, more than patient in agreeing to a number of modifications and extensions as noted above. In that regard it is significant that Wometco compounded its own financial difficulties by electing to pay a loan to two of its officers before discharging its obligations to TIAA. For these reasons, the other cases relied on by defendant are legally and factually inapposite. *See U S West Fin. Servs., Inc. v. Tollman,* 786 F.Supp. 333, 338 (S.D.N.Y.1992) (quoting *National Am. Corp. v. Federal Republic of Nig.,* 448 F.Supp. 622, 644 (S.D.N.Y.1978), *aff'd,* 597 F.2d 314 (2d Cir.1979)). *See also Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971) (duress where a subcontractor threatened non-performance of its contractual obligations to coerce defendant into agreeing to terms more favorable to plaintiff; by contrast, in the instant case, plaintiff never threatened non-performance, but rather insisted on a right it held under the contract).

Wometco cannot now be permitted to escape the consequences of that choice.[7]

 Defendants further argue that plaintiff breached its duty of good faith when it withheld its consent. However, the New York Court of Appeals has held that, in the absence of explicit contractual language stating that a party may not unreasonably withhold consent, parties may withhold consent for any reason or no reason, and that no implied obligation to act in good faith exists to limit that choice. *See Collard v. Incorporated Village of Flower Hill,* 52 N.Y.2d 594, 603–04, 439 N.Y.S.2d 326, 421 N.E.2d 818 (1981); *Dress Shirt Sales, Inc. v. Hotel Martinique Assocs.,* 12 N.Y.2d 339, 342, 239 N.Y.S.2d 660, 190 N.E.2d 10 (1963). *See also Sharma v. Skaarup Ship Management Corp.,* 916 F.2d 820, 827–28 (2d Cir.1990), *cert. denied,* 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). Moreover, an implied obligation of good faith cannot negate the express terms of a contract. *See Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *Sharma, supra,* 916 F.2d at 828; *National Westminster Bank, U.S.A. v. Ross,*

130 B.R. 656, 679 (S.D.N.Y.1991), *aff'd,* 962 F.2d 1 (2d Cir 1992). *Cf. Penthouse Int'l, Ltd. v. Dominion Fed. Sav. & Loan Ass'n,* 855 F.2d 963, 975 (2d Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 154 (1989).[8] It follows that where, as here, a contract negotiated at arm's length lacks specific language preventing plaintiff from unreasonably withholding consent, the Court can not and should not rewrite the contract to include such language which neither of the parties saw fit to insert in the contract.[9]

 Defendants also counterclaim for breach of fiduciary duty. They argue that plaintiff was a controlling shareholder by virtue of plaintiff's dual capacity as lender and as minority shareholder[10] with absolute veto power over any proposed refinancings. In what is usually a fact sensitive question, *see Hunt v. Bankers Trust Co.,* 689 F.Supp. 666, 675 (N.D.Tex.1987) (applying New York law), New York law inquires whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority or influence over the

7. Moreover, defendants's economic duress argument also fails to meet the fourth prong of the *Kamerman* test since Wometco could have filed for bankruptcy protection as an alternative to granting plaintiff's requests for further concessions. In any event, defendants certainly could and should have resorted to legal process earlier to redress plaintiff's allegedly wrongful behavior. *See, e.g., Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 755 F.2d 239, 251–52 (2d Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).

8. Additionally, the Court notes that, as a matter of policy, permitting Wometco to avoid its negotiated obligations here on that basis would have the undesirable effect of causing creditors to refuse to renegotiate loan terms in cases where debtors face financial difficulty.

9. Since on these facts no defense of economic duress is sustainable, and the contracts are therefore not voidable but valid and legally enforceable, it follows that defendants's other defenses and counterclaims must also fail. Clearly, by failing to pay the $1.4 million it owed under the terms of the Purchase Agreement, Wometco breached that agreement. Therefore, defendants's counterclaim that a declaratory judgment be entered determining that TIAA is both obligated to return all money received and not entitled to the money it seeks under the Modification Letter and the Purchase Agreement must be re-

jected. Similarly, there can be no merit to defendants's claim that plaintiff breached the Loan Agreement when plaintiff "forced" Wometco to agree to pay the $2.2 million loan acceleration premium not provided for under the Loan Agreement. Moreover, no claim for unjust enrichment/money had and received can stand where, as here, a contract covers the same subject matter for which relief is sought. *See Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 388–89, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (unjust enrichment); *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 48 (2d Cir.1988) (same); *Baratta v. Kozlowski,* 94 A.D.2d 454, 464 N.Y.S.2d 803, 810 (2d Dep't 1983) (money had and received). Furthermore, defendants's counterclaim of intentional interference with Corporate governance must fail since plaintiff had a lawful excuse or justification for any alleged interference since its right to interfere was specifically agreed to and expressed in a valid contract. However, defendants's counterclaim for specific performance of plaintiff's obligation to return the stock certificates has merit and TIAA will have to return the certificates if and when defendants make their required payment for the stock.

10. Defendants allege that TIAA owned 4.65% of Wometco's outstanding voting common stock and 81% of its outstanding non-voting common stock as of the execution of the Loan Agreement. See Second Amended Answer and Counterclaim, Counterclaim, ¶¶ 10, 43.

first. *See Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (2d Dep't 1976), *appeal dismissed,* 42 N.Y.2d 908, 397 N.Y.S.2d 1004, 366 N.E.2d 1358 (1977); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 767 F.Supp. 1220, 1231 (S.D.N.Y.1991), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992). A fiduciary duty also exists where one assumes control and responsibility over another. *See Gordon v. Bialystoker Center & Bikur Cholim, Inc.,* 45 N.Y.2d 692, 698, 412 N.Y.S.2d 593, 385 N.E.2d 285 (1978). Finally, the Restatement of Agency defines a fiduciary as one "having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." Restatement (Second) of Agency § 13 cmt. a (1957).

 On the undisputed facts of this case, however, it is clear that no proper finding of a fiduciary responsibility by TIAA to Wometco can be made. Defendants have not disputed and cannot dispute that the parties have had no relationship prior to or since this transaction, that they negotiated these contracts at arm's length, and that plaintiff did not have dominant control over Wometco since Wometco at all times had the power to effectuate viable alternatives to agreeing to plaintiff's requests. *See supra* p. 348, n. 6. Moreover, the facts show, without evidence to the contrary, that the parties did not have a confidential relationship,[11] and that no relationship of agency or trust ever existed between plaintiff and defendants. Indeed, the undisputed evidence clearly indicates quite the opposite, *i.e.,* that the parties had an ordinary arms-length business relationship. *See, e.g., Grumman Allied, supra,* 748 F.2d at 738–39; *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 122 (2d Cir.1984); *Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.,* 601 F.Supp. 770, 772 (S.D.N.Y.1985). Moreover, since the contracts never required TIAA to act on behalf of Wometco, there can be no basis for any claim of breach of any fiduciary duty. *See, e.g., Flintridge Station Assocs. v. American Fletcher Mortgage Co.,* 761 F.2d 434, 442 (7th Cir.1985); *B.C. Recreational*

*Indus. v. First Nat'l Bank of Boston,* 639 F.2d 828, 833 (1st Cir.1981).

## CONCLUSION

For the reasons given above, plaintiff's motion for summary judgment is hereby granted. Defendants and third-party defendants shall appear before the Court on October 15, 1993 for a Pre–Trial Conference.

It is **SO ORDERED.**

---

**11.** Indeed, defendants make no allegation that they relied on any special relationship with plaintiff, but instead relied on their own judgment and that of counsel and advisors. *See Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,* 748 F.2d 729, 739 (2d Cir.1984).