OPINION OF THE COURT
Martin Shulman, J.
Defendant Federated Department Stores, Inc. moves for summary judgment to dismiss the complaint alleging two causes of action for breach of contract and deceptive trade practices. Plaintiff Herbert Feinberg, as assignee of the claims of LA Alliance, Inc., formerly known as I. Appel Corp., opposes the motion. Federated also cross-moves to strike the affidavit of Donald Freeman annexed as exhibit I to plaintiff’s counsel’s affirmation in opposition or, alternatively, to reopen discovery to take Freeman’s deposition. Plaintiff similarly opposes the cross motion. The motion and cross motion are consolidated for disposition.
Feinberg is the assignee of the claims of LA Alliance, Inc., formerly known as I. Appel Corp.[1] Between 1976 and January 2001, Alliance was a manufacturer and distributor of intimate apparel which sold its merchandise to retail department stores Federated operated. (Motion, exhibit A, complaint 1i 4.) Plaintiffs complaint alleges in relevant part that: Alliance’s business depended upon access to retail store shelf space; Federated supplied Alliance (as well as other vendors) with a vendor standards manual (the VSM) which prescribes the procedures to be followed for Alliance’s delivery of goods and Federated’s payment therefor; Federated improperly assessed “charge-backs” against amounts owed to vendors such as Alliance; Federated *301 threatened to withhold shelf space from Alliance and other vendors unless they acquiesced to the charge-backs;[2] and Federated’s actions forced Alliance into bankruptcy. (See motion, exhibit A, complaint 1111 9, 10, 13, 24.)
The first cause of action alleges that defendant’s assessment of improper charge-backs breached the terms of the VSM[3] and seeks recovery of compensatory damages of at least $100,000 consisting of all charge-backs assessed since 1995 as well as punitive damages. The second cause of action alleges that Federated selectively enforced its charge-back policy against small vendors such as Alliance, driving such vendors out of business “to the detriment of consumers who are denied a choice of goods and prices.” (Motion, exhibit A, complaint 11 24.) Feinberg claims defendant’s acts constitute a deceptive act and practice under General Business Law § 349 and seeks damages of at least $250,000 plus treble damages and attorney’s fees.
In support of its motion for summary judgment, Federated argues that the course of performance and dealing between the parties and trade usage in the industry demonstrate Alliance’s agreement to Federated’s charge-back policy. Defendant further contends that plaintiff’s delay in objecting to the charge-backs operates as a waiver of its economic duress claims, and that any of Federated’s alleged threats cannot be construed as economic duress since Federated always had the option not to do business with Alliance. Finally, Federated argues that since Feinberg cannot establish any harm to the public, he cannot maintain a cause of action under General Business Law § 349.
Plaintiff counters that: no agreement between the parties authorized any profit margin markdown penalty; the contractual terms are unambiguous, thus, extrinsic evidence of a course of performance and dealing between the parties and industry custom is inadmissible; issues of fact exist because Alliance did object to the charge-backs vitiating Federated’s waiver defense; and the record contains several examples of Federated’s deceptive conduct injurious to the public.
*302 An award of summary judgment is appropriate when no issues of fact exist. (See CPLR 3212 [b]; Sun Yau Ko v Lincoln Sav. Bank, 99 AD2d 943 [1st Dept 1984], affd 62 NY2d 938 [1984]; Andre v Pomeroy, 35 NY2d 361 [1974].) In order to prevail on a motion for summary judgment, the proponent must make a prima facie showing of entitlement to judgment as a matter of law by providing sufficient evidence to eliminate any material issues of fact. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) Indeed, the moving party has the burden to present evidentiary facts to establish his cause sufficiently to entitle him to judgment as a matter of law. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].)
Breach of Contract
This action involves the sale of goods and is governed by the UCC. UCC 2-202 provides in relevant part:
“Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
“(a) by course of dealing[4] or usage of traded[5] (Section 1-205) or by course of performance (Section 2-208)” (emphasis added).
Contrary to plaintiffs claims, the parties’ written agreement(s), as embodied by the VSM and various purchase orders, may be explained or supplemented by course of dealing, usage of trade or course of performance. (See also, UCC 1-205 [3].) The statute’s express language renders evidence of the parties’ course of performance and dealing for more than a decade admissible. Such evidence is relevant to the interpretation of *303 the contract (s), without regard to any contractual ambiguity. (Walk-In Med. Ctrs., Inc. v Breuer Capital Corp., 818 F2d 260, 264 [2d Cir 1987]; Division of Triple T. Serv. v Mobil Oil Corp., 60 Misc 2d 720, 731 [Sup Ct, Westchester County 1969], affd 34 AD2d 618 [2d Dept 1970].)
With respect to course of performance, UCC 2-208 (1) further provides:
“Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement” (emphasis added).
Concerning Alliance’s alleged acquiescence to defendant’s charge-backs, Federated points to deposition testimony for the proposition that neither plaintiff nor Alliance ever objected to the markdown allowances. Rather, Feinberg instructed Alliance’s employees to negotiate with Federated to reduce the amount of profit margin markdowns taken.
Plaintiff disputes that it agreed to the profit margin markdowns and also points to deposition testimony of Alliance’s alleged objections as well as its coerced acquiescence to the markdown allowances. (Exhibit K, Levin opposition affidavit, at 12-16; exhibit N, Levin opposition affidavit, at 18-23; exhibit J, Levin opposition affidavit, at 26-30, 39, lines 18-23; 41, lines 3-16; exhibit M, Levin opposition affidavit, at 14-18.) Federated argues that Alliance did not timely object and thus waived its claim that it consented to the charge-backs under duress.[6]
Here, issues of fact exist as to: (1) whether Alliance objected to the markdown allowances during the relevant period and, if so, which ones; (2) the timeliness of Alliance’s alleged objections; and (3) whether Alliance’s ultimate acquiescence acted as a waiver of its claims in this action. (Great Am. Ins. Co. v M/V Handy Laker, 2002 WL 32191640, 2002 US Dist LEXIS 26378 [SD NY 2002], affd 348 F3d 352 [2d Cir 2003] [whether waiver has been established by the conduct of the parties during the performance of the contract is a question of fact]; Cliffstar Corp. *304 v Riverbend Prods., Inc., 750 F Supp 81 [WD NY 1990].) Further, there are issues of fact about the existence and scope of any alleged trade usage. (See UCC 1-205 [2].) Accordingly, this court denies the branch of defendant’s motion for summary judgment dismissing plaintiffs first cause of action for breach of contract.
Deceptive Trade Practices
General Business Law § 349 (a) prohibits “[deceptive acts or practices in the conduct of any business, trade or commerce.” Under General Business Law § 349 (h), a person injured due to a violation of General Business Law § 349 “may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages . . . , or both such actions.” The court may award reasonable attorney’s fees to a prevailing plaintiff. (Id.)
General Business Law § 349’s applicability to this case requires some background discussion of the statute’s purpose. The Court of Appeals summarized the legislative history of General Business Law § 349 in Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank (85 NY2d 20, 24-25 [1995]):
“As shown by its language and background, section 349 is directed at wrongs against the consuming public. General Business Law article 22-A, of which section 349 is a part, is entitled ‘Consumer Protection from Deceptive Acts and Practices.’ The structure of the law . . . speaks to its public focus. Finally, the Governor’s Memorandum approving the bill (L 1970, ch 43) lauds its consumer-protective purpose:
“ ‘Consumers have the right to an honest market place where trust prevails between buyer and seller. The power to obtain injunctions against any and all deceptive and fraudulent practices will be an important new weapon in New York State’s long standing efforts to protect people from consumer frauds’ (Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472).
“Thus, as a threshold matter, plaintiffs claiming the benefit of section 349 — whether individuals or entities such as the plaintiffs now before us — must charge conduct of the defendant that is consumer-oriented.” (Emphasis added.)
As noted in Genesco Entertainment, a Div. of Lymutt Indus., Inc. v Koch (593 F Supp 743, 751 [SD NY 1984]), the “typical *305 violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.” Thus, the essential elements of a cause of action under General Business Law § 349 are: “(1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act.” (Exxonmobil Inter-Am., Inc. v Advanced Info. Eng’g Servs., Inc., 328 F Supp 2d 443, 447 [SD NY 2004] [citations omitted].) Here, Federated challenges the second cause of action on two grounds: (1) no consumer-oriented act or practice is implicated in this action since Feinberg fails to prove the public suffered any injury as a result of Federated’s alleged actions;[7] and (2) even if markdown allowances were not contractually authorized, such acts are not a deceptive practice within the meaning of General Business Law § 349.
“A defendant engages in ‘consumer-oriented’ activity if his actions cause any ‘consumer injury or harm to the public interest.’ ” (New York v Feldman, 210 F Supp 2d 294, 301 [SD NY 2002], citing Securitron Magnalock Corp. v Schnabolk, 65 F3d 256, 264 [2d Cir 1995], cert denied 516 US 1114 [1996].) “The critical question ... is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor.” (Securitron Magnalock Corp. v Schnabolk, 65 F3d at 264 [2d Cir 1995].) In opposition to the motion, Feinberg notes the broad scope and applicability of General Business Law § 349.[8]
This action is clearly atypical of the majority of cases brought under General Business Law § 349, as it is brought not by a purchaser against a seller, but by a manufacturer/wholesaler of consumer goods against the retail purchaser of its goods who ultimately sells such goods to the public. Plaintiff alleges injury in the form of reduced profits and injury to the public due to increased prices the retailer charged for lingerie, a consumer good. That this case involves a dispute between two business entities does not automatically preclude the applicability of General Business Law § 349 to this case. (Cruz v NYNEX Info. *306 Resources, 263 AD2d 285, 290 [1st Dept 2000] [while severely limited, General Business Law § 349’s application to disputes between businesses is not entirely precluded]; see Securitron Magnalock Corp. v Schnabolk, supra [affirming a jury verdict finding that General Business Law § 349 applied to a dispute between two competing businesses where public safety was implicated by the defendant’s wrongful acts].)
The Court of Appeals has defined a “deceptive act or practice” as a representation or omission “likely to mislead a reasonable consumer acting reasonably under the circumstances.” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 26.) Such a question may be determined as a matter of law or fact as the individual case may require. (Id.) On this developed record, it is not necessary to determine if defendant’s acts are consumer oriented because Federated’s conduct is not a deceptive practice within the meaning of General Business Law §349.
Defendant’s actions upon which this case is based are distinguishable from other types of conduct found to be deceptive acts in violation of General Business Law § 349. By comparison, in Securitron Magnalock Corp. v Schnabolk (supra), the defendant intentionally made false statements regarding a competitor’s product. Such statements were made to a regulatory agency and potentially affected public safety. Similarly, in Verizon Directories Corp. v Yellow Book USA, Inc. (338 F Supp 2d 422 [ED NY 2004]), the defendant’s deceptive conduct consisted of a false and/or misleading statewide and national advertising campaign directed at the public. (See also, Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra [question of fact existed as to whether the defendant bank’s conduct constituted a deceptive act or practice under General Business Law § 349 where the bank alone possessed material information relevant to consumers and failed to provide such information]; Riordan v Nationwide Mut. Fire Ins. Co., 756 F Supp 732 [SD NY 1990], affd in part, question certified 977 F2d 47 [2d Cir 1992], certified question withdrawn 984 F2d 69 [2d Cir 1993] [defendant insurer’s claims settlement policy violated provisions of Insurance Law].)
Even if Federated breached its contract(s) with Alliance by assessing charge-backs, such actions are markedly different from the previously discussed deceptive and misleading practices. General Business Law § 349 “was designed to protect ‘the little guy’ from false advertising, pyramid schemes, bait-and- *307 switch sales tactics, and other mischievous machinations by swindlers and scallywags.” (Exxonmobil Inter-Am. Inc. v Advanced Info. Eng’g Servs., Inc., 328 F Supp 2d at 450.) Federated neither made false or misleading statements, nor did its conduct deceive or mislead plaintiff or the public. While plaintiff claims Federated’s policies are unfair and unjustified, defendant’s actions do not constitute a deceptive and misleading practice as contemplated by General Business Law § 349 and as interpreted by relevant case law. Accordingly, defendant is granted partial summary judgment dismissing the second cause of action for deceptive trade practices in violation of General Business Law § 349.
Freeman Affidavit
The court’s dismissal of the second cause of action moots defendant’s cross motion to strike the Freeman affidavit submitted in support of plaintiffs second cause of action.
Accordingly, it is hereby ordered that defendant’s motion for summary judgment is partially granted dismissing the second cause of action, and is otherwise denied; and it is further ordered that defendant’s cross motion is denied as moot.

. Feinberg was a majority shareholder and chairman of Alliance’s board of directors. (Motion, exhibit B, at 8, lines 16-24.)

. Plaintiff alleges that defendant imposed the charge-backs “simply because Federated had determined that it did not want to pay as much as it had previously agreed” or “simply because Federated’s revenues for a particular quarter were not as high as desired” (motion, exhibit A complaint 1Í1Í14, 15). The parties also refer to the “charge-backs” as “profit margin markdowns” and “markdown allowances.”

. In opposition to the instant motion, plaintiff alleges that the agreement(s) Federated breached consisted of the VSM and various purchase orders. (See Levin opposition affidavit, exhibits B-F.)

. “A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.” (UCC 1-205 [1].)

. “A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court” (UCC 1-205 [2] [emphasis added]).

. Plaintiff does not allege a cause of action for economic duress. Indeed, “economic duress is not recognized in New York as a cause of action, but is only a defense.” (Teachers Ins. & Annuity Assn. of Am. v Wometco Enters., Inc., 833 F Supp 344, 348 n 5 [SD NY 1993], citing Bank Leumi Trust Co. of N.Y. v D’Evori Intl., 163 AD2d 26, 30 [1st Dept 1990].)

. Federated specifically contends that Feinberg readily admitted at his deposition that he had no knowledge as to whether consumer prices increased or whether consumers were otherwise harmed due to Federated’s charge-leck policy. (Motion, exhibit C, at 38.) Defendant also points to plaintiffs lack of factual evidence to support such claims.

. See New York v Feldman, 210 F Supp 2d at 301 (statute applies to virtually all economic activity).